[No. S016912. Apr. 6, 1992.]

FARMERS INSURANCE EXCHANGE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Barger & Wolen, Richards D. Barger, Royal F. Oakes, Larry M. Golub and Linda C. Johnson for Petitioners.

No appearance for Respondent.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Andrea Sheridan Ordin, Chief Assistant Attorney General, Michael J. Strumwasser, Fredric D. Woocher and Herschel T. Elkins, Assistant Attorneys General, Albert Norman Sheldon, Ronald A. Reiter and M. Howard Wayne, Deputy Attorneys General, for Real Party in Interest.

Gary T. Yancey, District Attorney (Contra Costa), Gary E. Koeppel, Deputy District Attorney, Gail K. Hillebrand, Nettie Y. Hoge, Paul E. Lee and Robert Fellmeth as Amici Curiae on behalf of Real Party in Interest.

OPINION

LUCAS, C. J.—The People, through the Attorney General (real party in interest), filed suit against various insurers (petitioners) under the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.). We granted review to decide whether this judicial action should be stayed under the doctrine of "primary jurisdiction" pending administrative action by the Commissioner of the Department of Insurance (hereafter sometimes the Commissioner). (See Ins. Code, § 1858 et seq.; all further statutory references are to this code unless otherwise indicated.)

We conclude that in the absence of legislation clearly addressing whether a court may exercise discretion under the primary jurisdiction doctrine, a court may exercise such discretion and may decline to hear a suit until the administrative process has been invoked and completed. We hold that prior resort to the administrative process is required in the circumstances of this case and that the trial court abused its discretion in concluding otherwise.

## I. *Facts and Procedure*

The People filed a two-count complaint alleging petitioners violated sections 1861.02 and 1861.05, enacted by the voters in November 1988 as part of Proposition 103, by refusing to offer a "Good Driver Discount policy" to all eligible applicants.

In their first cause of action, the People claim that since November 1989, petitioners have violated the above provisions by: (i) refusing to offer and

sell a Good Driver Discount policy to any person who meets the standards of section 1861.025 (see § 1861.02, subd. (b)(1); (ii) refusing to charge persons who qualify for the Good Driver Discount policy a rate "at least 20% below the rate the insured would otherwise have been charged for the same coverage" (see § 1861.02, subd. (b)(2)); (iii) unlawfully using the absence of insurance as a criterion for determining eligibility for a Good Driver Discount policy, and generally, for the setting of automobile insurance rates and premiums (see § 1861.02, subd. (c)); and (iv) "unfairly discriminating in eligibility and rates for insurance for persons who qualify under the statutory criteria for a Good Driver Discount policy" (see § 1861.05, subd. (a)).

Under the first cause of action the People seek an order pursuant to Code of Civil Procedure section 526, enjoining petitioners from violating section 1861.02, subdivisions (b)(1), (b)(2), and (c), and section 1861.05, subdivision (a).

The second cause of action—which is the subject of this proceeding—incorporates the allegations of the first count, and asserts: "The violations of sections 1861.02 and 1861.05 as set forth above constitute unlawful and unfair business practices, in violation of Business and Professions Code section 17200."

Under the second cause of action the complaint seeks the injunctive relief described above pursuant to Business and Professions Code section 17204, a $2,500 civil penalty against each petitioner for each violation of law pursuant to Business and Professions Code section 17206, and "such other relief as this Court deems just and proper."

Petitioners demurred to both causes of action on the ground, inter alia, that the People's suit was precluded by their failure to pursue and exhaust administrative remedies. The trial court sustained the demurrer as to the first cause of action (the Insurance Code claim), concluding that under *County of Los Angeles* v. *Farmers Ins. Exchange* (1982) 132 Cal.App.3d 77, 85-87 [182 Cal.Rptr. 879], the People were barred from proceeding because they failed to exhaust administrative remedies available under the Insurance Code. The People do not contest this ruling.[1]

As to the second cause of action (the Business and Professions Code claim), however, the court overruled the demurrer, concluding that under

---

[1]This conclusion appears correct. Pursuant to the Insurance Code, the People's claims under that code are exclusively the province of the Insurance Commissioner. (§ 1860.2 ["The . . . enforcement of this chapter shall be governed solely by the provisions of this chapter."]; § 1858 et seq. [setting out procedures for administrative determination of rate and rate-making issues].) Judicial review is of course available to challenge those administrative determinations (see §§ 1858.6, 1861.09), but such review may be obtained only after the available administrative procedures have been invoked and exhausted. (See *post*, pp. 392, 393, fn. 11.)

*People* v. *McKale* (1979) 25 Cal.3d 626 [159 Cal.Rptr. 811, 602 P.2d 731], the People may proceed under the Business and Professions Code "even though there is a separate statutory scheme for enforcement of [Insurance Code] section 1861.02."

Petitioners sought a writ of mandate in the Court of Appeal challenging the propriety of this latter ruling. In an unpublished opinion, the Court of Appeal agreed with the trial court. It reasoned that "exhaustion of administrative remedies" is not required before an action under section 17200 of the Business and Professions Code may be prosecuted because (i) the People's second cause of action seeks a remedy that is "merely cumulative" to administrative remedies sought in the first count, and (ii) the courts can more promptly resolve the issues in this case than can the Insurance Commissioner.

As noted, we conclude prior resort to the administrative process is appropriate in these circumstances, and we therefore reverse the decision of the Court of Appeal.

## II. *The Statutory Schemes*

### A. *The Unfair Practices Act*

 The Unfair Practices Act is found in Business and Professions Code, section 17000 et seq. Section 17200 of the Business and Professions Code broadly defines "unfair competition" as, inter alia, any "unlawful, unfair or fraudulent business practice . . . ." "Unlawful business activity" proscribed under section 17200 includes " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 113 [101 Cal.Rptr. 745, 496 P.2d 817] [hereafter *Barquis*].) As the People observe in their brief on the merits, "[i]n essence, an action based on Business and Professions Code section 17200 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder."

Section 17205 of the Business and Professions Code states: "Unless otherwise expressly provided, *the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state*." (Italics added.) Section 17204 of the Business and Professions Code authorizes the Attorney General to prosecute an action to enjoin violations of section 17200 of the Business and Professions Code. Finally, Business and Professions Code section 17206 provides for a $2,500 civil penalty for each violation of section 17200.

The People's complaint under section 17200 of the Business and Professions Code is grounded on asserted violations of four provisions of the McBride-Grunsky Insurance Regulatory Act of 1947 (McBride Act) (Stats. 1947, ch. 805, §§ 1-7, pp. 1896-1908), which is set out in the Insurance Code, division 1, part 2, chapter 9. We will briefly outline the relevant provisions of the McBride Act before analyzing the People's action under the Business and Professions Code.

### B. *The McBride Act*

As modified by the voters through the initiative process, and by the Legislature through various amendments, the McBride Act presently is found in sections 1851 through 1861.16 of the Insurance Code.

#### 1. *Provisions for Administrative Hearings and Judicial Review*

Section 1858 establishes an administrative scheme under which "[a]ny person aggrieved by any rate charged, rating plan, rating system, or underwriting rule . . . may" file a complaint with the Insurance Commissioner. (*Id.*, subd. (a).)[2] If, after considering the insurer's response, the Commissioner finds the complaint states "probable cause" of a violation of the McBride Act, the commissioner "shall proceed as provided in Section 1858.1." (§ 1858, subd. (c).)

Section 1858.1 sets out procedures for the Commissioner's investigation and resolution of the complaint. If the Commissioner determines there is "good cause" to believe an insurer's rating scheme fails to comply with the requirements of the chapter, he or she "shall give notice in writing to that insurer, . . . stating therein in what manner and to what extent that noncompliance is alleged to exist and specifying therein a reasonable time . . . in which that noncompliance may be corrected, and specifying therein the amount of any penalty that may be due . . . ." (*Id.*, 1st par.) The section also sets out procedures to be followed by an insurer to contest the allegation of noncompliance, or, inter alia, to enter into a consent order. (*Id.*, 2d par.)

Section 1858.2 sets out procedures for public hearings on disputed issues and requires the Commissioner to issue a decision within 60 days after

---

[2] It is clear that the Attorney General, on behalf of the People, may initiate or intervene in such a complaint. (§ 1861.10, subd. (a) ["Any person may initiate or intervene in any proceeding permitted or established pursuant to this chapter, challenge any action of the commissioner under this article, and enforce any provision of this article"].)

As an alternative to the complaint procedure, section 1858.1, paragraph one, allows the Commissioner to initiate proceedings by providing the insurer with written notice of noncompliance.

submission following a hearing. Sections 1858.3 through 1858.5 concern powers granted the Commissioner, monitoring of complaints, and suspension of an insurer's license for noncompliance with the Commissioner's orders. Sections 1858.07 and 1859.1 set out monetary penalties for an insurer's failure to comply with statutory rate-setting provisions, or the Commissioner's orders.

Finally, section 1858.6 provides for judicial review following "[a]ny finding, . . . ruling or order made by the commissioner under this chapter . . . in accordance with the provisions of the Code of Civil Procedure."

### 2. Relevant Substantive Provisions

Various substantive sections of the McBride Act were significantly augmented and altered by the voters in November 1988. (See *CalFarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805 [258 Cal.Rptr. 161, 771 P.2d 1247].) The following sections are relevant here:

Section 1861.02, subdivision (b)(1) (hereafter section 1861.02(b)(1)), provides, inter alia, that all persons who meet specified criteria set out in section 1861.025 "shall be qualified to purchase a Good Driver Discount policy from the insurer of his or her choice." Section 1861.02, subdivision (b)(2) (hereafter section 1861.02(b)(2)), requires that the "rate charged for a Good Driver Discount policy shall . . . be at least 20% below the rate the insured would otherwise have been charged for the same coverage." Under subdivision (c) of section 1861.02 (hereafter section 1861.02(c)), "[t]he absence of prior automobile insurance coverage, in and of itself, shall not be a criterion for determining eligibility for a Good Driver Discount policy, or generally for automobile rates, premiums, or insurability." Finally, section 1861.05, subdivision (a) (hereafter section 1861.05(a)) states, "[n]o rate shall be approved or remain in effect which is . . . unfairly discriminatory or otherwise in violation of this chapter." (As noted above, the People claim petitioners have violated all four provisions since November 1989.)[3]

The voters in 1988 also repealed various sections that had previously exempted the business of insurance from this state's antitrust laws (see

---

[3]Effective September 1990, and operative January 1, 1991, the Legislature added section 1861.16, subdivision (b), which states: "An agent or representative representing one or more insurers having common ownership or operating in California under common management or control shall offer, and the insurer shall sell, a good driver discount policy to a good driver from an insurer within that common ownership, management, or control group, which offers the lowest rates for that coverage. This requirement applies notwithstanding the underwriting guidelines of any of those insurers or the underwriting guidelines of the common ownership, management, or control group. . . ." (Stats. 1990, ch. 1185, § 2, subd. (b) [No. 6 Deering's Adv. Legis. Service, p. 4450].)

former §§ 1850-1850.3, 1853, 1853.6, 1853.7), and added section 1861.03, subdivision (a), which provides: "The business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to, . . . the antitrust and unfair business practices laws (Parts 2 (commencing with section 16600) and 3 (commencing with Section 17500) of Division 7 of the Business and Professions Code)." Part 2 of the Business and Professions Code contains section 17200, the basis of the People's action in this case.

## III. *The Primary Jurisdiction Doctrine*

### A. *Development of the Doctrine*

The judicially created doctrine of "primary jurisdiction" (also referred to as the doctrine of "prior resort"[4] or "preliminary jurisdiction"[5]), originated in *Texas & Pac. Ry.* v. *Abilene Cotton Oil Co.* (1907) 204 U.S. 426 [51 L.Ed. 553, 27 S.Ct. 350] (hereafter *Abilene*), and as explained below, most of the development of the doctrine has occurred in the federal courts.

### 1. *Abilene*

In *Abilene, supra*, 204 U.S. 426, a shipper sued a railroad in state court under the common law to recover alleged unreasonable amounts charged for transporting interstate freight. Such common law suits had been regularly entertained before enactment of the Interstate Commerce Act (Commerce Act) and creation of the Interstate Commerce Commission (ICC) in 1887. (204 U.S. at p. 436 [51 L.Ed. at p. 557].) Under the Commerce Act, Congress granted the ICC power to hear such complaints by shippers, and to order reparations to those injured. (*Id.*, at p. 438 [51 L.Ed. at p. 558].) Despite provisions of the Commerce Act allowing a litigant to elect between administrative enforcement of statutory rights and judicial enforcement of common law rights,[6] the high court declined to allow the common law suit in the first instance. Instead, it ruled that in order to promote uniformity and

---

[4]See 2 Cooper, State Administrative Law (1965) pages 561-562 (hereafter Cooper).

[5]See, e.g., *Gt. No. Ry.* v. *Merchants Elev. Co.* (1922) 259 U.S. 285 [66 L.Ed. 943, 42 S.Ct. 477] (hereafter *Merchants*).

[6]Section 9 of the Commerce Act stated: " '[A]ny person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make a complaint to the Commission . . . or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act . . . ; but such person shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure herein provided for he or they will adopt. . . .' " (204 U.S. at pp. 438-439 [51 L.Ed. at p. 558], quoting the Commerce Act.) The statute also provided in section 22, " 'Nothing in this act . . . shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of

consistency of rate regulations, the shipper "must . . . primarily invoke redress through the Interstate Commerce Commission . . . ." (*Id.*, at p. 448 [51 L.Ed. at p. 562].) The court explained that "if, without previous action by the Commission, power might be exerted by courts and juries generally to determine the reasonableness of an established rate, it would follow that unless all courts reached an identical conclusion a uniform standard of rates in the future would be impossible, as the standard would fluctuate and vary, depending on the divergent conclusions reached as to reasonableness by the various courts called upon to consider the subject as an original question." (*Id.*, at p. 440 [51 L.Ed. at p. 559].)

The court concluded that the act should be construed to allow only those judicial actions that seek "redress of such wrongs as can, consistently with the context of the act, be redressed by courts without previous action by the Commission, and, therefore, does not imply the power in a court to primarily hear complaints concerning wrongs of the character of the one here complained of." (*Abilene, supra*, 204 U.S. at p. 442 [51 L.Ed. at p. 559]; see also *id.*, at p. 446 [51 L.Ed. at p. 561].)[7]

### 2. *Merchants*

The doctrine of *Abilene, supra*, 204 U.S. 426, was refined and clarified in *Merchants, supra*, 259 U.S. 285, another case in which a shipper attempted to press suit against a railway to recover asserted overcharges. Justice Brandeis, speaking for the court, allowed the state court suit to proceed because the issue presented in that case—i.e., the proper interpretation of a tariff—was one of law and neither involved disputed facts, nor required the exercise of expertise possessed by the ICC. The court explained, "Preliminary resort to the Commission [is necessary when] . . . the enquiry is essentially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission. Moreover,

---

this act are in addition to such remedies.' " (204 U.S. at p. 446 [51 L.Ed. at p. 561], quoting the Commerce Act.)

[7]Subsequent cases applying the primary jurisdiction doctrine have refrained from holding that courts have no power to entertain a civil suit, and have instead viewed the question as one of timing. Thus, as Professor Davis observed, "the law of primary jurisdiction almost always answers the question *when* a court may act, not the question *whether* it may act . . . ." (4 Davis, Administrative Law (2d ed. 1983) § 22:1, p. 82, italics in original; accord, 2 Cooper, *supra*, at p. 562 ["The doctrine does not operate to remove these issues completely from the sphere of judicial action; its operation is, rather, to determine whether the initial consideration of the matter should be by a court or by an agency. If it is held that the doctrine is applicable, and prior resort to the agency is required, the case may still (in appropriate instances) be considered by the courts subsequent to the administrative determination."]; accord, *Shernoff* v. *Superior Court* (1975) 44 Cal.App.3d 406, 409 [118 Cal.Rptr. 680]; see also *post*, p. 389, fn. 8 [discussing stay procedure under the primary jurisdiction doctrine].)

that determination is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable; and such acquaintance is commonly to be found only in a body of experts. But what construction shall be given to a railroad tariff presents ordinarily a question of law which does not differ in character from those presented when the construction of any other document is in dispute." (*Id.*, at p. 291 [66 L.Ed. at p. 946].)

### 3. *Western Pacific*

In a third railroad shipping case, *United States* v. *Western Pac. R. Co.* (1956) 352 U.S. 59 [1 L.Ed.2d 126, 77 S.Ct. 161] (hereafter *Western Pacific*), the shipper (the United States government) filed suit in the Court of Claims to recover alleged overcharges. The issue presented was similar to that in *Merchants*, *supra*, 259 U.S. 285, i.e., the construction of a railroad tariff. Specifically, the question posed was whether shipments of steel bomb cases filled with napalm gel should be classified as "incendiary bombs" (subject to a high first-class tariff rate) or merely "gasoline in steel drums" (subject to a lower, fifth-class rate).

The high court considered the factors articulated in *Abilene*, *supra*, 204 U.S. 426, and *Merchants*, *supra*, 259 U.S. 285, i.e., (i) "the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions" (*Western Pacific*, *supra*, 352 U.S. at p. 64 [1 L.Ed.2d at p. 132]), and (ii) the need to secure "the expert and specialized knowledge of the agencies involved." (*Ibid.*) The court asserted that the term "incendiary bomb," as used in the tariff regulations, posed a question of construction that "involves factors 'the adequate appreciation of which' presupposes an 'acquaintance with many intricate facts of transportation'" possessed by the ICC. (*Western Pacific*, *supra*, 352 U.S. at p. 66 [1 L.Ed.2d at p. 133], quoting *Merchants*, *supra*, 259 U.S. at p. 291 [66 L.Ed. at p. 946].) Accordingly, the court concluded, "in the circumstances here presented the question of tariff construction, as well as that of the reasonableness of the tariff as applied, was within the exclusive primary jurisdiction of the Interstate Commerce Commission." (*Western Pacific*, *supra*, 352 U.S. at p. 63 [1 L.Ed.2d at p. 132].)

### 4. *Nader*

A more recent high court case illustrates both procedural and substantive aspects of the primary jurisdiction doctrine. In *Nader* v. *Allegheny Airlines* (1976) 426 U.S. 290 [48 L.Ed.2d 643, 96 S.Ct. 1978] (hereafter *Nader*), the plaintiff filed a common law tort action for fraudulent misrepresentation

against an airline that sold him a confirmed ticket on an overbooked flight, causing the plaintiff to miss his flight. Like the statute at issue in *Abilene, supra,* 204 U.S. 426, the relevant section of the Federal Aviation Act (49 U.S.C. § 1381) provided, " '[n]othing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.' " (*Nader, supra,* 426 U.S. at p. 298 [48 L.Ed.2d at p. 651], quoting that act; see *ante,* pp. 386, 387, fn. 6.)

The United States District Court entertained the suit and entered judgment for the plaintiff, but the United States Court of Appeals for the District of Columbia, applying the primary jurisdiction doctrine, reversed and re-manded for administrative findings on, inter alia, the common law claim. It took judicial notice that the Civil Aeronautics Board (Board) was then considering the same challenges to carriers' overbooking practices in an ongoing rule-making proceeding, and held that before the plaintiff would be allowed to proceed with his misrepresentation action, the Board should be allowed to consider whether the challenged practices fell within its power to investigate complaints and issue cease-and-desist orders. (*Nader* v. *Allegheny Airlines, Inc.* (D.C.Cir. 1975) 512 F.2d 527, 546 [167 App.D.C. 350].) Accordingly, the court of appeals instructed the district court to *stay* further action on the plaintiff's misrepresentation claim pending the outcome of the rule-making proceeding. (*Id.,* at p. 552.)[8]

The high court reversed. Initially, it observed that there was no "irrecon-cilable conflict between the statutory scheme and the persistence of com-mon-law remedies. . . ," (*Nader, supra,* 426 U.S. 290, 299 [48 L.Ed.2d 643, 652]) and that "[u]nder the circumstances, the common-law action and the statute . . . may coexist." (*Id.,* at p. 300 [48 L.Ed.2d at p. 652].)

The court then proceeded to apply the primary jurisdiction doctrine. It noted that under the administrative scheme at issue, individual consumers were "not even entitled" to initiate proceedings before the Board. (*Nader, supra,* 426 U.S. at p. 302 [48 L.Ed.2d at p. 654].) The fact that the plaintiff in the case before it had no authority to bring an administrative action,

---

[8]The stay procedure employed by the court of appeal in *Nader* was consistent with prior high court cases involving the primary jurisdiction doctrine. In *Tank Car Corp.* v. *Terminal Co.* (1940) 308 U.S. 422, 433 [84 L.Ed. 361, 370, 60 S.Ct. 325], the court concluded: "When it appeared in the course of the litigation that an administrative problem, committed to the Commission, was involved, the court should have stayed its hand pending the Commission's determination of the lawfulness and reasonableness of the practices under the terms of the Act. There should not be a dismissal but . . . the cause should be held pending the conclusion of an appropriate administrative proceeding." (Citation omitted; accord, *Shernoff* v. *Superior Court, supra,* 44 Cal.App.3d 406, 408-409.)

however, did not resolve the court's primary jurisdiction inquiry. Instead, the court relied on *Western Pacific, supra,* 352 U.S. 59, and other primary jurisdiction cases, in determining whether "considerations of uniformity in regulation and of technical expertise . . . call for prior reference to the Board." (*Nader, supra,* 426 U.S. at p. 304 [48 L.Ed.2d at p. 655].) It concluded the proposed misrepresentation action posed no challenge to uniformity of regulation (*id.,* at pp. 304-305 [48 L.Ed.2d at p. 655]), and that "[t]he standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of this case." (*Id.,* at pp. 305-306 [48 L.Ed.2d at p. 656].) Accordingly, the court held prior resort to the administrative process was not required, and hence the plaintiff's "tort action should not be stayed pending reference to the Board . . . ." (*Id.,* at p. 307 [48 L.Ed.2d at p. 657].)

B. *The Primary Jurisdiction and Exhaustion Doctrines Compared*

Petitioners assert throughout their briefs that the People should be required to "exhaust" their administrative remedies before pursuing their civil action in this case. As suggested above and explained below, the applicable principle in this case is the primary jurisdiction doctrine, not the exhaustion doctrine.

■ Petitioners' mischaracterization is understandable because courts have often confused the two closely related concepts (see, e.g., 2 Cooper, *supra,* at pp. 572-573). "Both are essentially doctrines of comity between courts and agencies. They are two sides of the timing coin: Each determines whether an action may be brought in a court or whether an agency proceeding, or further agency proceeding, is necessary." (Schwartz, Administrative Law (1984) § 8.23, p. 485.)

In *Western Pacific, supra,* 352 U.S. 59, the high court explained: " '*Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone*; judicial interference is withheld until the administrative process has run its course. *'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts,* and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." (*Id.,* at pp. 63-64 [1 L.Ed.2d at p.132], italics added; see also Schwartz, *supra,* § 8.23 at p. 486 ["Exhaustion applies where an agency

alone has exclusive jurisdiction over a case; primary jurisdiction where both a court and an agency have the legal capacity to deal with the matter."].)

As noted above, count 1 of the People's complaint presented a question of exhaustion of administrative remedies; the People attempted to litigate Insurance Code claims over which the Insurance Commissioner has been given exclusive jurisdiction without first invoking and completing the available administrative process set out in the Insurance Code. (See *ante*, p. 382, fn. 1.) By contrast, count 2 of the complaint—the only count before us now—presents a different issue. The Business and Professions Code claim in count 2 is "originally cognizable in the courts," and thus it triggers application of the primary jurisdiction doctrine.

## C. *Policy Considerations Underlying the Primary Jurisdiction and Exhaustion Doctrines*

■ The policy reasons behind the two doctrines are similar and overlapping. The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary). (See 2 Cooper, *supra*, at p. 573; Schwartz, *supra*, § 8.30 at p. 503; Koch, Administrative Law and Practice (1985) § 10.22, p. 177.) As explained above, the primary jurisdiction doctrine advances two related policies: it enhances court decisionmaking and efficiency by allowing courts to take advantage of administrative expertise, and it helps assure uniform application of regulatory laws. (See *Western Pacific, supra,* 352 U.S. at pp. 64-65 [1 L.Ed.2d at p. 132]; 2 Cooper, *supra,* at p. 563; Schwartz, *supra,* § 8.24 at pp. 487-488; Koch, *supra,* § 10.23 at pp. 179-180; Modjeska, Administrative Law Practice and Procedure (1982) p. 204.)

No rigid formula exists for applying the primary jurisdiction doctrine (*Western Pacific, supra,* 352 U.S. 59, 64 [1 L.Ed.2d 126, 132]). Instead, resolution generally hinges on a court's determination of the extent to which the policies noted above are implicated in a given case. (*Ibid.*; 2 Cooper, *supra,* at pp. 564-570, and cases discussed.)[9] This discretionary approach

---

[9]Although this approach focuses on the benefits to be gained by courts (e.g., efficiency and uniform application of regulatory laws) and agencies (e.g., autonomy) under the primary jurisdiction doctrine, courts have also appropriately considered the alleged "inadequacy" of administrative remedies, and other factors affecting litigants, in determining whether the interests of justice militate against application of the doctrine in a particular case. (See, e.g., 2 Cooper, *supra,* at p. 570 ["[o]ccasionally, prior resort is excused on the grounds that the

leaves courts with considerable flexibility to avoid application of the doctrine in appropriate situations, as required by the interests of justice.[10]

## IV. *Whether the Legislature has Precluded Application of the Primary Jurisdiction Doctrine in Actions Filed Under Section 17200 of the Business and Professions Code*

The People suggest that the Legislature, by establishing "cumulative" administrative (§ 1858 et seq.) and civil (Bus. & Prof. Code, § 17200) "remedies" for the alleged violation of sections 1861.02 and 1861.05, has precluded courts from applying the primary jurisdiction doctrine in a case filed under the Business and Professions Code. In support, they cite *City of Susanville* v. *Lee C. Hess Co.* (1955) 45 Cal.2d 684 [290 P.2d 520] (hereafter *Susanville*), which states: "where a statute provides an administrative remedy and also provides an alternative judicial remedy the rule requiring exhaustion of the administrative remedy has no application if the person aggrieved and having both remedies afforded him by the same statute, elects to use the judicial one." (*Id.*, at p. 689, citing *Scripps etc. Hospital* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 669, 673-674 [151 P.2d 109, 155 A.L.R. 360] (hereafter *Scripps*); see also *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715] (hereafter *Abelleira*) ["where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act"].)

Contrary to the People's suggestions, we do not view the cited cases as addressing the primary jurisdiction doctrine. All three cases applied the exhaustion of remedies doctrine, and not the primary jurisdiction doctrine.[11]

administrative remedy would be plainly inadequate"]; Koch, *supra*, (1990 supp.) at p. 147 ["courts should consider the expense and delay to litigants before invoking the [primary jurisdiction] doctrine"].)

[10]Other state courts have declined to treat the doctrine of primary jurisdiction as an "inflexible mandate." Instead, the doctrine "is predicated on an attitude of judicial self-restraint, and is applied when the court believes that considerations of policy recommend that the issue be left to the administrative agency for initial determination. . . . The state courts have made it plain . . . that the application of the requirement involves the exercise of judicial discretion." (2 Cooper, *supra*, at pp. 564-565.)

[11]In *Abelleira*, *supra*, 17 Cal.2d 280, numerous longshoremen registered for unemployment benefits, and an administrative tribunal of the California Employment Commission ruled in their favor. Before exercising their statutory right to appeal the referee's decision to the Employment Commission itself, various employers sought writ relief from the referee's decision in the courts. (*Id.*, at pp. 283-285.) We explained that before the commission had an opportunity to rule on the employers' appeal, the employers had "no right to demand an extraordinary writ from a court" (*id.*, at p. 292), and stated, "where an administrative remedy is provided by statute, *relief must be sought from the administrative body and this remedy exhausted* before the courts will act." (*Ibid.*, italics added.)

Moreover, to the extent the People may be understood to assert that the analysis of *Scripps, supra,* 24 Cal.2d 669, and *Susanville, supra,* 45 Cal.2d 684, should control here by analogy, we find those cases inapposite. *Scripps, supra,* 24 Cal.3d 669, makes it clear that the trial court properly declined to *dismiss* an employer's action for its failure to *exhaust* an available, "alternative" administrative remedy, but nowhere does it address the primary jurisdiction question, namely, whether the trial court had authority to (i) entertain a civil action, and (ii) in the exercise of its discretion under the judicially created primary jurisdiction doctrine, *stay* the judicial proceedings pending action by the administrative agency (see *ante,* p. 389, fn. 8). The same is true of *Susanville, supra.*[12] Accordingly, we do not read the cited cases as prohibiting a court from exercising its discretion under the primary jurisdiction doctrine merely because "alternative" or "cumulative" administrative

---

*Scripps, supra,* 24 Cal.2d 669, concerned an employer's claim that it was exempt from the obligation to make unemployment insurance contributions. After receiving an unfavorable ruling from the Employment Commission, but before exercising its statutory right to have its claim reheard before the "entire commission," the employer paid the challenged taxes and filed legal actions in court to recover the amounts paid. We noted that whereas one section of the applicable statute provided for a rehearing before the entire commission, another section of the same act provided that any employer could pay the contribution, and then bring a legal action for recovery. (*Scripps, supra,* 24 Cal.2d at p. 673.) We found the Legislature did not intend the administrative rehearing remedy to be "a necessary precedent to the use of the other remedy expressly given by the statute" (*ibid.*), and reasoned that the "usual rule" of *Abelleira, supra,* 17 Cal.2d 280, did not apply when "alternative" remedies are made available by statute, because "it is not for the courts to add conditions to the exercise of that right which are not imposed by the statute." (*Scripps, supra,* 24 Cal.2d at p. 674.) We concluded, "the court correctly refused to grant the motion[ ] to dismiss." (*Ibid.*)

*Susanville, supra,* 45 Cal.2d 684, followed *Scripps.* After the City Council of Susanville accepted a contractor's bid for public works, it rescinded the award, and accepted another bid. The applicable statute gave both the contractor and the city a right to bring a civil action to determine the " 'validity of the proceedings [before the council] and the validity of any contract entered, or to be entered, pursuant thereto.' " (*Susanville, supra,* 45 Cal.2d at p. 688.) The city initiated a proceeding under the above section, and the trial court ruled on the merits that the city had acted properly. In response to the contractor's appeal of the trial court's ruling, the city asserted the contractor " 'lost all right it might have had to object to the rescinding action taken by the council . . . because it had never appealed to the city council, that is to say, had not exercised its right to administrative remedies . . . .' " (45 Cal.2d at p. 689.) We rejected the point on the ground that the applicable statute granted "alternative" judicial and administrative remedies to the contractor, and accordingly, under *Scripps, supra,* " 'the rule requiring exhaustion of administrative remedies has no application.' " (*Susanville, supra,* 45 Cal.2d at p. 689.)

[12]A more recent case, *McKee v. Bell-Carter Olive Co.* (1986) 186 Cal.App.3d 1230 [231 Cal.Rptr. 304], concerned a common law action for breach of contract. The court observed that "cumulative" administrative remedies were provided under the Food and Agricultural Code, and held, on the basis of *Susanville, supra,* 45 Cal.2d 684, 689, that "exhaustion" of the administrative remedy was unnecessary. (*McKee, supra,* 186 Cal.App.3d at pp. 1239-1246.) We do not read *McKee, supra,* as suggesting that the availability of "cumulative" administrative remedies bars application of the *primary jurisdiction doctrine* in a civil action.

and civil remedies are made available to a plaintiff.[13] We conclude instead as follows:

▮ If the Legislature establishes a scheme under which a court is prohibited from exercising discretion under the doctrine of primary jurisdiction, a court must honor the legislative scheme, and may not decline to adjudicate a suit on the basis that available administrative processes should first be invoked and completed. If, however, the Legislature does not preclude a court from exercising its discretion under the primary jurisdiction doctrine, a court may do so and, in appropriate cases, may decline to adjudicate a suit until the administrative process has been invoked and completed.

▮ Accordingly, the threshold question we must decide is whether the Legislature established a scheme that precludes a court from exercising discretion under the primary jurisdiction doctrine. For the reasons set out below, we conclude the legislative scheme at issue here does not address the primary jurisdiction issue, and a court thus is free to exercise its discretion to determine whether to stay proceedings in this suit pending action by the Insurance Commissioner.

The People assert that section 1861.03, subdivision (a) (which, as noted above,[14] provides that the insurance industry is subject to, inter alia, Bus. & Prof. Code § 17200 et seq.) "neither restricts the use of section 17200 in insurance cases nor requires the use of administrative procedures within the Department of Insurance for the implementation of section 17200 or the adjudication of any violations. . . ."

We agree that section 1861.03 does not condition a suit under Business and Professions Code section 17200 on prior resort to the administrative process under the Insurance Code. Indeed, it does not speak to that issue at all. It merely modifies preexisting law, to provide, in essence, that insurers are subject to the unfair business practices laws *in addition to* preexisting regulations under the McBride Act, as amended. Section 1861.03 discloses no legislative preference for, or against, permitting a court to exercise its discretion under the primary jurisdiction doctrine to stay judicial proceedings pending action by the Insurance Commissioner.

The People advance a similar argument with respect to Business and Professions Code section 17205, which, as noted above, states: "Unless

---

[13]Contrary to assertions of amicus curiae for the People, this conclusion is not in conflict with, but is consistent with, the high court's analysis in *Nader, supra*, 426 U.S. 290, 300-301 [48 L.Ed.2d 643, 653]. (See *ante*, pp. 388-390.)

[14]Section 1861.03, subdivision (a) is quoted, *ante*, at page 386.

otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state." We conclude, however, that the "unfair competition" remedy provided under Business and Professions Code section 17205 also fails to disclose legislative intent one way or the other on the question presented here, namely, whether the Legislature intended to preclude a court from exercising discretion under the primary jurisdiction doctrine in a suit filed under Business and Professions Code section 17200. Instead, section 17205 merely reflects legislative intent that the remedy under Business and Professions Code section 17200 not displace any other remedy that might exist.

We base our construction of section 17205 of the Business and Professions Code not merely on the language of that section viewed in isolation, but on the scheme of the Unfair Practices Act as a whole. As noted above, section 17200 of the Business and Professions Code defines "unfair competition" very broadly, to include " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " (*Barquis, supra,* 7 Cal.3d 94, 113.) Because it sweeps so broadly, the Unfair Practices Act applies to many situations in which no administrative process is available to address the challenged practice. Thus there is nothing from which we can conclude that the Legislature intended to preclude a court presented with a suit under the Unfair Practices Act from exercising discretion under the primary jurisdiction doctrine, in situations in which the practice challenged is one over which an administrative agency may also exercise jurisdiction. Instead, as with section 1861.03, subdivision (a), we conclude the Unfair Practices Act, and Business and Professions Code section 17205 in particular, discloses no legislative intent to preclude a court from exercising discretion under the primary jurisdiction doctrine before entertaining a civil action under section 17200 of the Business and Professions Code. It follows that we may consider whether to stay judicial proceedings pending action by the Insurance Commissioner in this case.

## V. *Recent Application of the Primary Jurisdiction Doctrine*

Recently we applied primary jurisdiction principles in *Rojo* v. *Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P2d 373] (*Rojo*), in which the plaintiff asserted (i) statutory violations of the Fair Employment and Housing Act (Gov. Code, § 12900 et seq., hereafter the FEHA), and (ii) common law violations (intentional infliction of emotional distress, and wrongful discharge in contravention of public policy). Instead of submitting her claims to the administrative body established under the FEHA, the plaintiff in *Rojo* filed a civil suit.

We held exhaustion of available remedies under the FEHA necessary before a plaintiff may proceed with *statutory claims* under that act (*Rojo, supra,* 52 Cal.3d at pp. 83-84), but we found prior resort[15] unnecessary before a plaintiff may proceed with a civil suit based on *common law claims* for damages resulting from sex discrimination in employment (*id.,* at pp. 84-88). A review of the factors motivating this latter holding assists our analysis in the present case.

We held prior resort to the administrative process unnecessary for two reasons. First, we explained, "the FEHA does not have a 'pervasive and self-contained system of administrative procedure' [citation] for general regulation or monitoring of employer-employee relations so as to assess or prevent discrimination or related wrongs in the employment context . . . ." (*Rojo, supra,* 52 Cal.3d at pp. 87-88.) Second, "the factual issues in an employment discrimination case [are not] of a complex or technical nature beyond the usual competence of the judicial system." (*Id.,* at p. 88.) We concluded, "[w]ith all due respect to the efficiency and expertise the [administrative agency] bring[s] to bear in investigating and determining statutory discrimination cases, and the salutary effect [it has] on the settlement and disposition of such cases, these are not cases having such a paramount need for specialized agency fact-finding expertise as to require [prior resort to and] exhaustion of administrative remedies before permitting an aggrieved person to pursue his or her related nonstatutory claims and remedies in court." (*Ibid.*)

## VI. *Application of the Primary Jurisdiction Doctrine in This Case*

Our analysis in *Rojo, supra,* 52 Cal.3d 65, informs the result in this case. First, as explained above (*ante,* pp. 384-385), the Insurance Commissioner has at his disposal a "pervasive and self-contained system of administrative procedure" (*Rojo, supra,* at p. 87) to deal with the precise questions involved herein.

Second, and more important, based on the allegations in the People's complaint, there is good reason to require that these administrative procedures be invoked here. As we explain below, we conclude that considerations of judicial economy, and concerns for uniformity in application of the complex insurance regulations here involved, strongly militate in favor of a stay to await action by the Insurance Commissioner in the present case.

In *Rojo, supra,* 52 Cal.3d 65, we reasoned that in light of the nature of the common law action involved in that case, the agency had no special expertise that would warrant prior resort to its procedures. By contrast, other

---

[15]As have other state and federal courts in other contexts, we referred to "exhaustion" of administrative remedies in this portion of *Rojo* although we were in fact considering a question of prior resort to administrative procedures under the primary jurisdiction doctrine.

courts have observed that questions involving insurance rate making pose issues for which specialized agency fact-finding and expertise is needed in order to both resolve complex factual questions and provide a record for subsequent judicial review. As noted in *Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 986 [201 Cal.Rptr. 379], "[the Insurance Commissioner's] determination with respect to controverted rates could not only be of inestimable value to a court should trial be inevitable, but might eliminate the need for a trial, or might resolve major elements of dispute." (See also *County of Los Angeles* v. *Farmers Ins. Exchange, supra,* 132 Cal.App.3d 77, 87 ["the Insurance Commissioner and the Department of Insurance possess sophisticated bodies of expertise in this field which make them particularly able to handle these matters"].)

The People assert the claims at issue here "involve relatively simple factual determinations which do not require the detailed examination of experts within the Department of Insurance." To support this view of their complaint, they assert, for the first time in briefs filed in this court, that their action is in reality one to preclude Farmers Insurance Exchange from referring persons who meet the criteria for a Good Driver Discount policy to Mid-Century Insurance Company, a "substandard" insurer that is part of the Farmers Group, but which charges rates "substantially higher" than Farmers for the same coverage.[16]

We cannot accept the People's recharacterization of their complaint. The complaint filed in superior court makes no mention of any alleged improper referral plan between Farmers and Mid-Century, and, although it was clearly possible for the People to do so,[17] the complaint does not on its face allege the factual claim that the People now advance. Instead, the complaint tracks

---

[16]The People's brief reads as follows: "In the months following the November 8, 1989[,] operative date for section 1861.02, the Attorney General received reports regarding widespread violations of the good driver provisions of that section. Notably, defendant Farmers Insurance was refusing to sell good driver discount insurance policies to persons who meet the definition of a good driver. Instead, Farmers referred those persons to defendant Mid-Century Insurance Company, a substandard company that is part of the Farmers Group [and] which charged substantially higher rates than Farmers for the same coverage. In the belief that defendants were failing to comply with the statute's requirements, the Attorney General, on March 2, 1990, filed the instant complaint pursuant to Business and Professions Code section 17200."

[17]Over four months before the People's complaint was filed in this case, the Insurance Commissioner filed a "Notice of Noncompliance Pursuant to Insurance Code Section 1858.1" against Farmers Insurance Exchange and Mid-Century Insurance Company alleging, inter alia, that "Farmers and Mid-Century Insurance Company . . . agreed that [certain applicants] who apply for insurance from Farmers would be offered and issued a policy in Mid-Century only and would not be offered or issued a policy in Farmers." The record also discloses that two days after the People's complaint was filed in this matter, the Insurance Commissioner filed another "Notice of Noncompliance" against Farmers Insurance Exchange, alleging the

the specific language of four of the numerous Insurance Code provisions that relate to Good Driver Discount policies. Taken at face value, the People's complaint alleges violations of specific statutory eligibility rules governing such policies, and violations of the statutory rules for rates under those policies.

■ We conclude that in determining whether it is appropriate to issue a stay of judicial proceedings in order to permit administrative action under the primary jurisdiction doctrine, we must confine our analysis to the complaint as written. ■ A review of the allegations in the People's complaint demonstrates the "paramount need for specialized agency fact-finding expertise" in this case. (*Rojo, supra,* 52 Cal.3d at p. 88.)

The gravamen of the People's action under section 17200 of the Business and Professions Code is alleged violation of three specific "Good Driver Discount policy" provisions of section 1861.02(b) and 1861.02(c), and the "unfairly discriminatory rates" provision of section 1861.05(a). In order to decide whether petitioners have violated the cited subdivisions of section 1861.02, it must be determined whether petitioners refused to offer discount policies to those who qualified for such a policy; refused to charge rates at least 20 percent below the rate that would otherwise have been charged; and used the absence of prior automobile insurance coverage, "in and of itself," to determine eligibility for a Good Driver Discount policy, or to establish rates and premiums. In order to decide whether petitioners have violated section 1861.05, it must be determined whether they employed an "unfairly discriminatory" rate. The resolution of these questions mandates exercise of expertise presumably possessed by the Insurance Commissioner, and poses a risk of inconsistent application of the regulatory statutes if courts are forced to rule on such matters without benefit of the views of the agency charged with regulating the insurance industry.

First, in determining eligibility for Good Driver Discount policies, section 1861.02(b)(1) specifies that the criteria set out in section 1861.025 are to be used. That section in turn addresses the eligibility of persons who have been involved in accidents during the prior three years, and who were "principally at fault." (§ 1861.025, subd. (b)(1), (b)(4).) The statute further provides, as to both criteria, "[t]he commissioner shall adopt regulations setting guidelines to be used by insurers for their determination of fault for the purposes

---

underwriting rules "made or used by Farmers . . . do not comply with the requirements of . . . section 1861.02(b)(1) and California Code of Regulations, Title 10, Chapter 5, subchapter 4.7." The notice alleges the Commissioner "is informed and believes" that Farmers has refused, and continues to refuse to issue Good Driver Discount policies to various groups of persons who otherwise qualified under the provisions of the Insurance Code.

of [these] paragraph[s]." (§ 1861.025, subd. (b)(4); see Cal. Code Regs., tit. 10, ch. 5, subch, 4.7, § 2632.13.1.) It seems clear to us that the Insurance Commissioner is best suited initially to determine whether his or her own regulations pertaining to eligibility have been faithfully adhered to by an insurer.

Similarly, the determination of whether a given Good Driver Discount policy comports with the "20 percent discount" provision of the statute also calls for exercise of administrative expertise preliminary to judicial review. Inevitably, analysis of the People's claim will require "a searching inquiry into the factual complexities of [automobile] insurance ratemaking and the conditions of that market during the turbulent time here involved." (*Karlin* v. *Zalta, supra,* 154 Cal.App.3d 953, 983.) To address the People's claim, one must inquire into the insurer's ratemaking process in order to determine what the rate would be for a given driver without the discount. Thereafter one must discern whether the rate offered on a given Good Driver Discount policy is 20 percent below what the insured would otherwise have been charged. As we have observed, the question of insurance rate regulation has "traditionally commanded administrative expertise applied to controlled industries." (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 323 [70 Cal.Rptr. 849, 444 P.2d 481].)

There is no reason to conclude otherwise in the present case; we think it is plain that a court attempting to determine whether a given Good Driver Discount policy meets the statutory 20 percent discount requirements should have the benefit of the Insurance Commissioner's expert assessment of that issue. In addition, we note that section 1861.02, subdivision (e), provides, "The commissioner shall adopt regulations implementing *this section* and insurers may submit applications pursuant to this article which comply with those regulations . . . ." (Italics added; see Cal. Code Regs., tit. 10, ch. 5, subch. 4.7, § 2632.1 et seq.) As above, it seems clear that the Insurance Commissioner, rather than a court, is best suited initially to determine whether his or her own regulations pertaining to compliance have been faithfully adhered to by an insurer.[18]

Finally, and for the same reasons, the determination whether petitioners employed rates that are "unfairly discriminatory" also calls for exercise of administrative expertise preliminary to judicial review. In practice, resolution of the "unfairly discriminatory rate" question will turn in many instances on determination of the above discussed rate-setting provisions of

---

[18]For similar reasons, the determination of whether petitioners have used the absence of prior insurance "in and of itself" as "a criterion for determining eligibility for a Good Driver Discount policy, or generally for automobile rates, premiums, or insurability," also calls for exercise of administrative expertise preliminary to judicial review.

the Insurance Code. It is readily apparent that a court would benefit immensely, and uniformity of decisions would be greatly enhanced, by having an expert administrative analysis available before attempting to grapple with such a potentially broad-ranging and technical question of insurance law.[19]

Accordingly, we reject the People's assertion that because eventual recourse to the courts is likely in this case, nothing is to be gained by requiring prior resort to the administrative process involved here. As we said in *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465, 476 [131 Cal.Rptr. 90, 551 P.2d 410], "even if . . . ultimate resort to the courts [is] inevitable [citation], the prior administrative proceeding will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review." In addition, we reject any suggestion that the interests of justice militate against a requirement of prior resort in this case. (See *ante*, pp. 391-392, fns. 9 & 10.) The People do not assert that the administrative remedies available from the Insurance Commissioner are "inadequate," and we dismiss as unsupported conjecture the suggestion that prior resort to the administrative process will unduly delay or frustrate resolution of the issues presented in the People's complaint.

The cases cited by the People (*People* v. *McKale, supra,* 25 Cal.3d 626; *People* v. *Los Angeles Palm, Inc.* (1981) 121 Cal.App.3d 25 [175 Cal.Rptr. 257]; and *People* v. *Casa Blanca Convalescent Homes, Inc.* (1984) 159 Cal.App.3d 509 [206 Cal.Rptr. 164, 53 A.L.R.4th 661]) do not require a contrary result. In *McKale, supra,* 25 Cal.3d 626, we held that although a specific statutory remedy existed for a violation of the Mobilehome Park Act (Health & Saf. Code, § 18200 et seq.), a civil action for unfair competition under Business and Professions Code section 17200 et seq. was proper. *Los Angeles Palm, Inc., supra,* 121 Cal.App.3d 25, allowed an action under section 17200 et seq. of the Business and Professions Code although the Labor Code provided a remedy for the harm alleged. *Casa Blanca Convalescent Homes, Inc., supra,* 159 Cal.App.3d 509, recognized the Attorney General's right to sue under Business and Professions Code section 17200 et seq. based on conduct also regulated by the Department of Health Services under Health and Safety Code section 1417 et seq. All three cases, however, are inapposite.

---

[19]Shortly before oral argument the Insurance Commissioner, in a letter to the court, expressed his views that (i) we should not require "exhaustion" of Insurance Code claims in "all" cases filed under the Business and Professions Code; and (ii) we should not require prior resort to the administrative process in the present case. As explained above, we agree that the "exhaustion" rule does not apply to the claims at issue here; but as also explained above, we conclude prior resort to the administrative process is required because the People's complaint demonstrates the "paramount need for specialized agency fact-finding expertise" in this case. (*Rojo, supra,* 52 Cal.3d at p. 88.)

Each decision focused on *whether*—not *when*—the People may bring an unfair competition action. At most, they may be read as implicitly holding that, based on the allegations involved in those matters, prior resort to available administrative processes was unnecessary on the facts of each case. None of the cases stands for the proposition that actions brought under the Business and Professions Code are, as a matter of law, outside the application of the primary jurisdiction doctrine.

■ Finally, we reject the People's unsupported and novel claim that because the Attorney General is the chief law enforcement officer of the state, actions filed by him should not be subject to the primary jurisdiction doctrine. The reasons supporting the doctrine apply to private citizens and the Attorney General alike, and the two classes of plaintiffs should be treated equally. The primary jurisdiction doctrine evolved for the benefit of courts and administrative agencies, and unless precluded by the Legislature, it may be invoked whenever a court concludes there is a "paramount need for specialized agency fact-finding expertise." (*Rojo, supra,* 52 Cal.3d at p. 88.)[20]

## VII. *Conclusion*

We conclude, based on the complaint as it stands, that a paramount need for specialized agency review militates in favor of imposing a requirement of prior resort to the administrative process, and as noted above we reject any suggestion that the interests of justice militate against application of a prior resort requirement in this case.

Accordingly, the judgment of the Court of Appeal is reversed with directions to issue a writ of mandate directing the superior court to stay judicial proceedings in this case and retain the matter on the court's docket pending proceedings before the Insurance Commissioner (see, e.g., *Tank Car Corp.* v. *Terminal Co., supra,* 308 U.S. 422, 432-433 [84 L.Ed. 361, 370]; *Shernoff* v. *Superior Court, supra,* 44 Cal.App.3d 406, 408-409), and to closely monitor the progress of the administrative proceedings to ensure against unreasonable delay of the People's civil action (see, e.g., *Shernoff* v. *Superior Court,*

[20]Similarly, we reject the assertion of amicus curiae, the District Attorney of Contra Costa County, that district attorneys lack standing to bring administrative actions before the Insurance Commissioner, and thus a district attorney who wishes to prosecute a Business and Professions Code action against an insurer should be allowed to do so without regard to the primary jurisdiction doctrine. Application of the doctrine does not depend on the civil litigant's ability to bring an administrative action; instead, the doctrine may be applied so long as the administrative agency itself has the authority to initiate administrative action. (See *Nader, supra,* 426 U.S. at pp. 302-304 [48 L.Ed.2d at p. 654] [undertaking primary jurisdiction analysis although plaintiff was not entitled to bring administrative action].) As observed, *ante,* page 384, footnote 2, the Insurance Commissioner has authority to initiate action under the Insurance Code.

*supra*, 44 Cal.App.3d 406, 408; *Red Lake Band of Chippewa Indians* v. *Barlow* (8th Cir. 1988) 846 F.2d. 474, 476-477; see generally *Rohr Industries* v. *Wash. Metro Area Transit Auth.* (D.C.Cir. 1983) 720 F.2d 1319, 1326-1327 [232 App.D.C. 92]).

Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

MOSK, J.—I dissent. California has never recognized the doctrine of primary jurisdiction, and prior authority in this state is in conflict with that concept. Even if this court should decide at some time to judicially legislate that theory, the facts involved in this case, and the dilatory result, do not justify its application. Finally, there are sound reasons of policy for holding that the question whether petitioners violated the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.) should be decided by a court initially rather than by successive determinations by the Commissioner of the Department of Insurance (Insurance Commissioner) and a court.

I

No decision in this state has ever forthrightly applied the doctrine of primary jurisdiction, and the three California cases to which the majority refer and attempt to distinguish are in direct conflict with that doctrine. (*City of Susanville* v. *Lee C. Hess Co.* (1955) 45 Cal.2d 684 [290 P.2d 520] (*Susanville*); *Scripps etc. Hospital* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 669 [151 P.2d 109, 155 A.L.R. 360] (*Scripps*); *McKee* v. *Bell-Carter Olive Co.* (1986) 186 Cal.App.3d 1230 [231 Cal.Rptr. 304] (*McKee*).)[1] Each holds that in a situation like the matter before us, in which a litigant is afforded the choice whether to bring a proceeding before an administrative body or to file an action in court, the litigant may choose either remedy, and is not required to resort initially to the agency for the vindication of his or her rights. The holdings in these cases are in direct conflict with the majority's determination that a court has discretion whether or not to exercise jurisdiction under these circumstances.

---

[1]The only California case cited by the majority that even mentions the primary jurisdiction theory is *Shernoff* v. *Superior Court* (1975) 44 Cal.App.3d 406 [118 Cal.Rptr. 680]. There, the plaintiffs filed an action against numerous insurers, alleging that they had conspired to fix rates. The trial court issued a stay "on a theory of primary jurisdiction, a theory which assumed that for reasons of comity the Insurance Commissioner should be given the first opportunity" to act on the allegations. (*Id.* at p. 408.) The Court of Appeal vacated the stay order, holding that the plaintiffs were not required to exhaust their administrative remedies because the Insurance Commissioner did not have the power to grant damages, the relief sought by the plaintiffs. In the course of its discussion, the court stated that the "doctrine of primary jurisdiction does not permanently foreclose judicial action but rather it provides the appropriate administrative agency with an opportunity to act if it so chooses. At most, the commissioner's jurisdiction is 'primary,' not 'exclusive,' and in this instance he has chosen not to exercise it." (*Id.* at p. 409.)

If anything, the present case is an even stronger vehicle than the cited cases for application of the well-established rule relied on therein. The statutes in those those cases (with the exception of *McKee*) merely granted the right to an administrative determination or to a court action. They did not contain language like section 17205 of the Business and Professions Code, which provides explicitly that the remedies under the Unfair Practices Act are "cumulative" to those granted under any other laws.

The majority opinion declares that the three cases cited applied "the exhaustion of remedies doctrine, and not the primary jurisdiction doctrine." I disagree with this characterization of the cases. In fact, all three cases refused to apply the exhaustion doctrine because the Legislature had given the aggrieved party a choice of remedies. As the majority opinion concedes, the exhaustion doctrine applies when the administrative agency *alone* has initial jurisdiction to hear the matter. In all three cases cited above—as well as in the present case—both the agency and a court had such power, and therefore the exhaustion doctrine did not apply. The majority simply refuse to adhere to the prevailing theory on which those cases were decided, i.e., that it is for the litigant to choose which forum to utilize in these circumstances.

The opinion attempts to distinguish *Scripps* on the ground that it did not "address the primary jurisdiction question" because it failed to decide whether a court has authority to exercise its discretion to stay judicial proceedings pending action by an administrative agency. In fact, the *Scripps* court's holding can only be read as prohibiting the exercise of such discretion. After stating the rule that a litigant may choose the forum in which to bring the action if the Legislature has provided alternative remedies, *Scripps* declares that "it is not for the courts to add conditions to the exercise of [the right to bring an action in court] which are not imposed by the statute." (24 Cal.2d at p. 674.) I cannot read this holding as anything but a determination that a court does not have the power to require a litigant to first resort to an administrative remedy when a statute provides a choice whether to do so or to bring a court action.

As for *Susanville*, which the majority attempt to distinguish on the same ground as *Scripps*, it holds that the rule requiring exhaustion of administrative remedies has "no application" if the aggrieved person is granted alternative remedies and elects to use judicial means. (45 Cal.2d at p. 689.) This amounts to a determination that a court cannot compel a litigant to resort to the process of an administrative agency if one has been granted the right to sue in court.

The majority state, regarding *McKee*, that they do not to read the opinion in that case as suggesting that the availability of cumulative remedies bars

application of the primary jurisdiction doctrine. In my view, there is no other way to read the decision. The *McKee* opinion recites the general rule of *Scripps*, and then concludes that because the administrative proceeding and the court action are cumulative remedies, plaintiff is not required to exhaust administrative remedies. (186 Cal.App.3d 1230 at p. 1246.) A party who has been granted the right to bring a court action cannot be compelled to exhaust administrative remedies, if either course is open under the law.

The only case cited by the majority which they claim applied the doctrine of primary jurisdiction in California is *Rojo* v. *Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373] (*Rojo*). However, as the majority must recognize, *Rojo* refers not to that doctrine but to exhaustion of remedies. There, the plaintiffs filed a civil action seeking damages for employment discrimination. We held that they should not be required to exhaust their remedies before the Fair Employment and Housing Commission, employing reasoning generally used to determine whether a party should be required to exhaust administrative remedies. (See e.g., *Karlin* v. *Zalta* (1984) 154 Cal.App.3d 953, 983 [201 Cal.Rptr. 379].)

If it should be deemed advisable to adopt a judge-made doctrine of primary jurisdiction in this state, the majority should state forthrightly that they do so, instead of futilely attempting to distinguish cases which are incompatible with the existence of that doctrine.

## II

Even if the primary jurisdiction principle should become applicable in California, it would not apply under the circumstances of this case.

The majority state several grounds for requiring the People to bring this proceeding before the Insurance Commissioner. First, relying on the reasons advanced in *Rojo*, they assert that here, unlike in that case, the administrative agency has "a 'pervasive and self-contained system of administrative procedure' to deal with the precise questions involved herein." In support of this proposition, they cite sections of the Insurance Code that prescribe the procedure for the investigation and resolution of complaints regarding allegations of unfair rates. That is, notice and hearing, proceedings to contest the allegations made by the complainant, and provisions for appeal. But the Fair Employment and Housing Commission in *Rojo* had similar powers. (52 Cal.3d at p. 72.) I dispute the majority's assertion that the administrative procedures for challenging rates before the Insurance Commissioner are "pervasive," for we have found in a case as recently decided as *Rojo* that similar procedures do not meet that description.

Nor do I agree with the second ground offered by the majority as the justification for requiring that the People resort first to a determination of the issues raised in their complaint by the Insurance Commissioner, i.e., that his expertise is required to resolve the issues. Unlike *Karlin* v. *Zalta, supra,* 154 Cal.App.2d 953, 983, on which the majority rely, the issues raised by the People are not "singularly within the technical competence of the Insurance Commissioner through the enlistment of agency resources." The question whether an insured is entitled to a "good driver" discount depends on whether the driver was involved in an accident during the prior three years, and was "principally at fault." The insurer makes the determination of fault under guidelines issued by the commissioner. (Ins. Code, § 1861.025, subd. (b)(4).) A court in its fact-finding role is at least as qualified as the commissioner to determine whether an insurer has followed those guidelines. (Cf. *Gt. No. Ry.* v. *Merchants Elev. Co.* (1922) 259 U.S. 285, 291 [66 L.Ed. 943, 946, 42 S.Ct. 477], refusing to apply the primary jurisdiction doctrine because "what construction shall be given to a railroad tariff presents ordinarily a question of law . . . .") This determination of facts cannot be said to be within the special "technical competence," of the Insurance Commissioner. It is significant that he makes no such claim in this case.

Once the question of fault is decided, it is necessary to ascertain whether the required discount has been afforded. The majority assert that this determination calls for a "searching inquiry into the factual complexities of [automobile] insurance ratemaking." I disagree. The issue here is not whether the insurer charged a reasonable rate or one which complies with statutory requirements for such a rate, but whether the rate charged is below what the insurer would have charged without the discount. The answer to that is clear under the circumstances of this case. No determination whether the discount was afforded is required by either the Insurance Commissioner or a court because it is undisputed that the "good driver" discount provisions have not been implemented. It follows that the rate charged is in excess of the rate which would have been charged without the discount.

The majority claim also that uniformity of decision will be enhanced by an administrative determination of the issues raised in the People's complaint before a court attempts to grapple with "such a broad-ranging and technical question of insurance law." But the question whether a driver is entitled to a "good driver" discount under the guidelines adopted by the commissioner involves the application of those guidelines to the circumstances of a particular case. I fail to see how uniformity of decision will be promoted by a preliminary determination of the issue by the commissioner since the fault of each driver depends on the facts relating to a specific

driving record, and application of the guidelines thereto. Those are typical decisions made by a court rather than an administrative agency.

### III

Furthermore, there are persuasive policy reasons which militate against application of the primary jurisdiction doctrine in this case.

First, it will not promote judicial economy. In *Rojo*, we reasoned that a determination by the administrative agency of the issues raised in the complaint would have no beneficial impact on the judicial system because the case must in any event still enter the "judicial pipeline." (52 Cal.3d at p. 88.) This rationale also applies here. If, as occurred in *Shernoff* v. *Superior Court, supra,* 44 Cal.App.3d 406, the Insurance Commissioner declines to exercise his jurisdiction to decide the issues raised in this proceeding—as he indicates he is likely to do by his support of the Attorney General herein— the courts will not receive the assistance from administrative determination of the issues which the majority claim as the justification for application of the primary jurisdiction doctrine.

Moreover, as we also observed in *Rojo*, requiring the agency to decide the matter would limit the resources available to it for resolution of cases within its jurisdiction. It is no secret that the Insurance Commissioner is under-staffed and overburdened with litigation relating to Proposition 103. The Department of Insurance agrees. It supports the position of the People in this case on the ground that the Insurance Commissioner cannot reasonably be expected to respond to all allegations of violations of the Unfair Practices Act, and that requiring the exhaustion of administrative remedies would weaken or destroy the effectiveness of remedies granted thereunder.

By providing in Proposition 103 that both the Insurance Commissioner and the People should have the power to enforce the "good driver" provisions, the voters clearly intended that the People have the right to obtain an expeditious determination before a court whether an insurer is complying with those provisions. They did not contemplate dilatory proceedings and successive decisions on the same issue by the Insurance Commissioner and subsequently by the courts. The holding of the majority violates this intent.

Finally, the opinion dismisses summarily as "unsupported conjecture" the claim that prior resort to the administrative process will unduly delay or frustrate resolution of the issues presented by the People. As the majority concede, however, expense to litigants and delay are factors which militate against application of the doctrine. (See *United States* v. *McDonnell Douglas*

*Corp.* (8th Cir. 1984) 751 F.2d 220, 224; *Miss. Power & Light Co.* v. *United Gas Pipe Line Co.* (5th Cir. 1976) 532 F.2d 412, 419; cf. *Rojo, supra,* 52 Cal.3d 65, 88.)

It is now three and one-half years since Proposition 103 was enacted, and the voters are still waiting for the enforcement of the discount insurers are required to afford to good drivers. The majority fail to justify the significant and unnecessary delay which their holding is certain to cause in the enforcement of this key provision of Proposition 103.

I would affirm the judgment of the Court of Appeal.