KENTMASTER MANUFACTURING CO., a California Corporation, Plaintiff–Appellant,

v.

JARVIS PRODUCTS CORPORATION, a Connecticut Corporation, Defendant–Appellee.

No. 96–56341.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1998.

Decided June 11, 1998.

---

1. He requested a jury instruction to this effect.

2. There is no reason for me to reach the issue of qualified immunity.

Don T. Hibner, Jr. and Michelle Sherman, Sheppard, Mullin, Richter & Hampton, Los Angeles, CA, for plaintiff-appellant.

Maxwell M. Blecher and Donald R. Pepperman, Blecher & Collins, Los Angeles, CA; Cornelius Danaher, Jr. and Frank H. Santoro, Danaher, Tedford, Lagnese & Neal, Hartford, CT, for defendant-appellee.

Before: PREGERSON, HALL and
NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Kentmaster Manufacturing Co. (Kentmaster), a California corporation, appeals the judgment entered on the pleadings by the district court in Kentmaster's antitrust suit against Jarvis Products Corporation (Jarvis), a Connecticut corporation. Holding that Kentmaster's own allegations undercut its case, we affirm the judgment of the district court.

### ALLEGATIONS

We summarize from the complaint, accepting its allegations as true and quoting from it as appropriate:

Kentmaster manufactures, distributes, and sells specialty power tools and equipment in the slaughterhouse industry and provides the spare parts and services for the power tools and equipment it sells. Jarvis similarly manufactures, distributes, and sells specialty power tools and equipment in the slaughterhouse industry and supplies spares and services for what it sells. The equipment of each company includes a formidable assault arsenal: air knives, aitch bone cutters, band saws, beef head-droppers, brisket saws, carcass band saws, de-horners, hock cutters, tongue bone cutters, and vacuum power units.

In the normal course of slaughterhouse operations the equipment lasts three to five years. Spares "are required continuously." Spares are not interchangeable from one manufacturer to another but "are unique to the equipment." Once a particular brand of equipment is in a slaughterhouse, plant managers "will generally continue purchasing new replacement equipment from the equipment's manufacturer over another manufacturer, so as to avoid any possible disruption in their operations, and to continue using any spares ... left in stock."

"Because of the highly specialized nature of the equipment and spares, and because a manufacturer must be able to offer a full line of equipment and spares, there are only a few companies who manufacture slaughterhouse equipment and spares in the United States. Of these Jarvis and Kentmaster comprise most of the sales in the markets described herein, Jarvis having an ever-increasing market share. Currently, Jarvis 'sales' represent approximately 80% of all sales of slaughterhouse equipment and spares. Kentmaster sells most of the remainder. Jarvis and Kentmaster each sell 100% of the spares for their respective equipment."

In the last four years Jarvis has offered to replace, or has replaced, existing Kentmaster equipment with new Jarvis equipment "at no cost to the customer, or at predatorily low prices." Jarvis has offered potential Kentmaster customers free equipment provided they "agree to select Jarvis' equipment and spares." Jarvis has offered to equip, and has equipped, new slaughterhouses with equipment "at no cost, or at predatorily low prices, provided the customer cancels its pending orders with Kentmaster." Jarvis discriminates in its prices, "giving the most favorable terms to current customers of Kentmaster, who agree to no longer operate Kentmaster equipment." Jarvis has discriminated among customers by giving allowances other than for services rendered and has secretly given selected customers payments, allowances, services or privileges, to the injury of Kentmaster and other competitors. Jarvis has announced to its customers and potential customers that it has "declared war" and will eliminate Kentmaster as a competitor.

Due to the wear and tear that slaughterhouse equipment must undergo and its continuous replacement, the sale of spares "is a highly profitable high volume business." Like Kentmaster, Jarvis enjoys a monopoly position in the sale of its spares. Because of this monopoly power Jarvis is able "to give its equipment away, grant secret rebates, or charge predatorily low prices." Prices charged by Jarvis for its spares "have had a steady and marked increase in the last few years." Jarvis has used its sale of spares "as a means of offsetting and recouping losses

from predatorily low prices, secret rebates and[/]or product giveaways."

## PROCEEDINGS

On December 21, 1995, Kentmaster filed the present suit. Based on the foregoing allegations, Kentmaster charged Jarvis with conduct intentionally monopolizing or attempting to monopolize the United States market for the sale of slaughterhouse equipment and the United States market for spares, with anticompetitive effect on Jarvis's competitors, the artificial increase of prices resulting in "high prices for slaughterhouse, equipment and spares," the stifling of technological innovation and the unequal treatment of purchasers of the equipment, all in violation of section 2 of the Sherman Act, 15 U.S.C. § 2.

In its second claim for relief Kentmaster charged Jarvis with violation of section 16 of the Clayton Act, 15 U.S.C. § 15, and sought injunctive relief. In its third claim, Kentmaster alleged violations of the Robinson–Patman Act, § 2(a) and (c), 15 U.S.C. § 13(a) and (c) by Jarvis's discriminatory pricing of its equipment. Kentmaster's fourth claim asserted violations of the California Unfair Practices Act, California Business and Professions Code § 17,045 *et seq.* Its fifth claim asserted unfair competition contrary to the same code, § 17,200. Its sixth claim alleged tortious interference with its contracts with slaughterhouses; its seventh alleged tortious interference with prospective economic advantage.

Under Fed.R.Civ.P. 12(b)(6), Jarvis moved to dismiss for failure to state a claim. The district court ruled: "Defendant's alleged practice of providing slaughterhouse equipment at little or no cost to customers as part of a system in which customers also purchase spare and replacement parts from Defendant at profitable prices is not anticompetitive. On the face of the Complaint, the Court can conclude that such alleged pricing practices (in which Plaintiff also engages) benefit customers and do not constitute antitrust injury." The court found no federal cause of action. The court cited California law to find nothing actionable in the state causes of action, which the court characterized as Jarvis's "soliciting a rival's customers." The court dismissed the complaint with prejudice. Kentmaster appeals.

## ANALYSIS

Kentmaster's description of its product is of a unit made up of equipment and of spares—a unit sold over a period where the purchaser of what might be called section A knows that eventually he will be buying complementary section B. No rational purchaser would look only at A's price and suppose that he could have A without B. Since A will not work for long without B, and since no one else but Kentmaster makes B, the rational buyer of A must calculate the cost of B when he makes his initial purchase. Kentmaster alleges no special market imperfections, such as imperfect information, that would prevent consumers from accurately determining the total cost of A and B. According to Kentmaster's allegations, only an idiot would think of the cost of A without taking into account the cost of B.

Kentmaster's description of Jarvis's product is similar. No one can buy section C of the product without knowing that he must buy D. There is a single product, sold over time; the rationally-calculated price is the price of C and D together.

Kentmaster alleges that the sale of spares (the Bs and Ds of the description) "is a highly profitable high volume business." In the context of the complaint that means highly profitable for the two concerns in the market, Kentmaster and Jarvis. Kentmaster further alleges that Jarvis has used its sales of spares (the section D of its product) "as a means of offsetting and recouping" its low prices, rebates, and giveaways. That allegation is a straightforward admission that the total price of the single unit, C plus D, is not predatory.

The case is significantly different from *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), but decisively spoken to by dicta therein. Kodak was charged with violations of section 1 and 2 of the Sherman Act by tying arrangements between the sale of its servicing of equipment and sale of

parts. Kodak contended that the servicing and the parts were not separate markets, but the Supreme Court found that some consumers would purchase service without parts and some consumers would purchase parts without service, so that there was not a single product. *Id.* at 462, 112 S.Ct. 2072. The Supreme Court further held that Kodak dominance in the equipment market arguably gave it monopoly power in the discrete market of parts and the discrete market of services; at least a trial was necessary to gauge the effect. *Id.* at 479. But in the dicta that are governing here, the Supreme Court declared that Kodak lost only if a trier of fact could find "that service and parts are two distinct products." *Id.* at 462. In our case, on the face of the complaint, Jarvis's equipment and spares are described so that they necessarily constitute a single product.

Not only does Kentmaster's own descriptions destroy its charge of predation; they also show there is no antitrust injury. Apparently, because Jarvis is said to be enlarging its market share, Jarvis's C and D is beating Kentmaster's price for Kentmaster's competitive product of sections A and B. To beat a competitor's prices is not an offense against the antitrust laws. To beat a competitor's prices is a boon to customers choosing between the competitors. To beat a competitor's prices is good business and normal business. Neither the Sherman Act nor Clayton Act claims can stand.

"By its terms, the Robinson–Patman Act condemns price discrimination only to the extent that its threatens to injure competition." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 220, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993). To prove a predatory pricing claim under Robinson–Patman requires the same showing of unfair, anti-competitive pricing required to prove a claim under section 2 of the Sherman Act. *Id.* at 222, 113 S.Ct. 2578. For the reasons already stated, Kentmaster's complaint undermines its Robinson–Patman claim that Jarvis practiced such pricing.

■ The State Claims. The state claims, to the extent that they depend on allegations of predatory pricing, fail for the same reasons that the federal claims fail. In

this way, the fourth claim, alleging violation of the California Unfair Practices Act, Cal. Bus. & Prof.Code § 17045 et. seq., requires allegation of an injury to competition. *ABC Int'l Traders, Inc. v. Matsushita Elec. Corp. of America*, 14 Cal.4th 1247, 61 Cal.Rptr.2d 112, 931 P.2d 290, 298 (1997). Kentmaster vainly relies on its predatory pricing claim as the relevant injury. In the same way, the claim for unfair competition under §§ 17200 and 17203 of Cal. Bus. & Prof.Code requires allegations of an independent, unlawful act. *See Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 6 Cal.Rptr.2d 487, 826 P.2d 730, 734 (1992). Kentmaster refers to the "anti-competitive acts" alleged in the complaint, but these acts are the predatory pricing claims which we have already held insufficient.

To succeed on this claim for tortious interference with contractual relations, Kentmaster had to allege a valid and existing contract, of which Jarvis knew and for which Jarvis intended to induce its breach and did induce its breach by unjustified conduct causing Kentmaster damage. *See Summit Machine Tool Mfg. Corp. v. Victor CNC Sys. Inc.*, 7 F.3d 1434, 1442 (9th Cir.1993). Kentmaster has not identified any existing contracts and does not even directly allege that any contracts were breached.

■ To succeed on the seventh claim, interference with prospective economic advantage, under California law Kentmaster had to plead that the defendant engaged in conduct that was wrongful by some legal measure "other than the fact of interference itself." *Della Penna v. Toyota Motor Sales*, 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 902 P.2d 740, 751 (1995). Kentmaster provides no other wrongful act except those we have already held to be insufficient.

■ Kentmaster now asks to amend its complaint. In the district court Kentmaster did not move to amend, as was its right. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995), Fed.R.Civ.P. 15(a). In oral argument on appeal, when asked by the court what an amended complaint would say, counsel for Kentmaster stated:

If I were given the opportunity to do so, I would flesh out ¶ 10, demonstrate and [to] allege that, while spares are profitable, if you give away the more expensive equipment, you're still engaged in predatory conduct, namely giving away at below average variable cost, either the quote [inaudible] or the complementary product spares. It makes no difference. We'd like to have an opportunity to prove that …

Such amendment would merely enlarge on the legal theory rejected by this opinion. There is no purpose in allowing a futile amendment. *Newland v. Dalton*, 81 F.3d 904 (9th Cir.1996).

**AFFIRMED.**

PREGERSON, Circuit Judge, dissenting:

I dissent because I believe that Kentmaster's complaint states monopoly and attempted monopoly claims against Jarvis under Section 2 of the Sherman Act. *See* 15 U.S.C. § 2. The majority disagrees because it believes that Jarvis did not engage in predatory pricing. The majority bases this belief on two dependent premises: that slaughterhouse equipment and spare parts constitute a single product and that Jarvis recouped losses associated with the slaughterhouse equipment when it sold spare parts. I don't agree with the first premise, and I fail to see how the second premise absolves Jarvis from liability.

The majority finds that slaughterhouse equipment and spare parts are one product because "only an idiot would think of the cost of [the equipment] without taking into account the cost of [the spare parts]." Under this rationale, there could never be separate markets for products that are functionally related to each other. But the Supreme Court has rejected this assumption, suggesting that there could be separate markets for such functionally-related products as "cameras and film, computers and software, or automobiles and tires." *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 463, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Likewise, I believe that there could be sepa-

rate markets for slaughterhouse equipment and spare parts.

Nevertheless, even if the slaughterhouse equipment and spare parts were part of the same market, I would not absolve Jarvis of liability just because it recouped its losses. *Every* monopoly, if it is successful, will eventually recoup its losses. The point at which to ascertain predatory pricing is the initial sale.

Here, the initial "sale" took place when Jarvis delivered its equipment to Kentmaster's customers either for free or at below-cost prices. At that point, Jarvis's prices were predatory. Unlike the majority, I do not believe that the complaint's allegations about recoupment change this fact. On the contrary, the fact that Jarvis was able to recoup its losses through the sale of spare parts shows that Jarvis was succeeding in its attempt to create a monopoly. Accordingly, I would reverse the district court's judgment on the pleadings under Rule 12(b)(6) of the Federal Rules of Civil Procedure and give Kentmaster a chance to prove its antitrust claims.