[No. B115091. Second Dist., Div. Six. Dec. 14, 1998.]

ROBERT LeVINE, Plaintiff and Appellant, v.
CHARLES WEIS, as Superintendent, etc., et al., Defendants and
Appellants.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

COUNSEL

Lowthorp, Richards, McMillan, Miller, Conway & Templeman, E. P. Michael Karcis and Glenn J. Campbell for Plaintiff and Appellant.

Parham & Rajcic, Jackson E. Parham and Pamela A. Dempsey for Defendants and Appellants.

OPINION

**GILBERT, Acting P. J.**—Plaintiff, a schoolteacher, complains to his superiors that his classrooms are unlawfully understaffed. He is terminated and brings an action alleging, among other causes of action, wrongful termination under the False Claims Act. (Gov. Code, § 12650 et seq.) The trial court grants summary adjudication in favor of defendants. Later plaintiff's entire action is dismissed.

Here we hold that the False Claims Act applies to governmental entities. We therefore reverse the grant of summary adjudication for the cause of action based on the False Claims Act. In all other respects, we affirm.

FACTS

Robert LeVine was employed as a teacher by the Ventura County Superintendent of Schools (hereinafter VCSS) for approximately three and a half

years. He held an emergency credential that expired annually. He was assigned to the McBride School at Ventura County Juvenile Hall. He worked in the "unit school" for maximum security inmates.

LeVine was the only teacher for between 40 to 80 students spread among 4 locked classrooms. In a memorandum dated August of 1994, LeVine complained to VCSS about understaffing. Levine raised these concerns at a McBride School staff meeting on December 14, 1994. The meeting was attended by the school principal, Dale Strayhorn.

Shortly thereafter LeVine received a memorandum from Strayhorn. The memorandum referred to the December 14 meeting. It stated in part: "During this meeting you participated in a discussion regarding coverage in Unit School. The discussion primarily involved you and me, and it lasted for approximately twelve minutes. [¶] During this discussion you made some statements that I felt were inappropriate. You stated you were not going to discuss the topic with me further, that I am incompetent to resolve the budget issue pertaining to hiring another personnel [*sic*] for Unit School, and that you were going directly to the Assistant Superintendent, Sandi Shackelford, the Superintendent, Dr. Charles Weis, and then to the State Department for a resolution; therefore, stipulating that you find it unnecessary to problem solve with me, Site Administrator, to coordinate procedures that will insure quality and safe educational program in Unit School." The memorandum stated that it would be placed in LeVine's personnel file.

On December 20, 1994, LeVine met with Strayhorn and Cary Dritz, director of human resources for VCSS. The meeting was recorded. During the meeting Strayhorn told LeVine: "I have [*sic*] conversations with Correctional staff this morning and in the conversations, uh, they feel that you are, uh, irrational, you're showing an irrational behavior, and because of that we're going to ask you to go home on sick leave the rest of this week and for you to return we're going to ask that you request, uh, from your doctor a note saying that you are capable of coming back to work."

LeVine stated: "[A]s far as people making statements about me, I'd like to hear it to my face." Dritz replied: "It doesn't always work that way."

LeVine filed grievances on January 3 and 5, 1995, complaining about "retaliatory action taken for expressing his views at the 12/14/94, meeting." LeVine claimed in his grievance that at the December 14 staff meeting, "I stated over and over that I wanted a reason why these kids should be deprived of an instructor in the room when clearly they were bringing in the funding to easily pay for some desperately needed, long documented, staff help."

On January 9, 1995, LeVine attended a meeting with Dritz and Chris Meagher, the teachers' bargaining unit representative. The purpose of the meeting was to resolve LeVine's grievance and to work out terms under which he could return to work.

Meagher and Dritz believed an agreement was reached at the meeting. A letter sent by Dritz to LeVine recited that LeVine had agreed to abide by the following "expectations": "1. Able to remain calm in crisis. 2. Listen actively without becoming defensive or authoritarian. 3. Avoid win-lose conflicts. 4. Maintain a problem-solving orientation rather than resorting to withdrawal, blaming, hysteria or other emotional over-reactions. 5. Be courteous and considerate at all times. Convey professional demeanor. 6. Show respect for people in authority, even if you do not always agree with them. 7. Maintain a spirit of collegiality and promote a professional partnership with site administrator. 8. Report all problems and concerns to the site administrator. 9. Communicate regularly with the site administrator."

The letter also stated that VCSS personnel would meet with LeVine within five days to, among other matters, "[r]esolve staffing issues at McBride School." The letter stated LeVine would be expected to return to work on February 6, 1995. If LeVine agreed he was to sign and return a copy of the letter by January 16, 1995.

LeVine denied that any such agreement had been reached. He wrote a letter to Dritz dated January 13, 1995, stating that Dritz's letter had been referred to LeVine's attorney for formal response. LeVine's letter stated in part: "[W]hile certain aspects of your communication were within a range that would permit further discussion, certain matters were omitted, and others in need of elaboration and clarification . . . ." The letter from LeVine's attorney stated, among other matters, that the staffing problem should be addressed prior to LeVine's return to work; that is, "what additional coverage is to be provided . . . within what time frame?"

LeVine testified in a deposition that Dritz was calling him at home "trying to badger me into coming back" to work. Then LeVine said, "I'm not saying he was trying to get me to come back to work at all. I don't know what was in Mr. Dritz's mind." LeVine said the essence of the telephone calls was that "[Dritz] was trying to force me to accept conditions that were demeaning, degrading and illegal . . . ."

Dritz wrote LeVine's attorney a letter dated January 23, 1995. The letter stated in part: "Mr. Levine will either return to work on or before January 23, 1995, [sic] and be in compliance with the directives of the January 9,

1995, memorandum or we will consider that he is absent without leave, failing to follow the direct orders of the Ventura County Superintendent of Schools Office abandoning his position with the Ventura County Superintendent of Schools Office."

LeVine testified that he received the letter after January 23, 1995. He said that when he received the letter he believed the "door had been shut" on his return to work. On February 7, 1995, LeVine received a letter from VCSS confirming that his employment had been terminated.

[[/]]*

·VCSS made a motion for summary judgment or in the alternative, for summary adjudication. [[/]]*

[[/]]*

[[/]]* The trial court granted summary adjudication [[/]]* on the causes of action sounding in unlawful termination. [[/]]*

[[/]]*

## DISCUSSION

Summary judgment or summary adjudication is properly granted only where there is no triable issue of fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subds. (c) & (f).) ▉ Where the defendant is the moving party, it bears the burden of showing that one or more elements of the cause of action cannot be established or that there is a complete defense. (*Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 743-745 [41 Cal.Rptr.2d 719].) Unless the defendant meets its burden, plaintiff has no obligation to demonstrate that there is a triable issue of fact. (*Ibid.*)

## I.

▉ LeVine contends the trial court erred in granting summary adjudication as to his cause of action based on Government Code section 12653.

Section 12653 of the Government Code is part of the False Claims Act. The False Claims Act concerns claims made against the state or any of its

*See footnote, *ante*, page 758.

political subdivisions for money, property or services. (Gov. Code, § 12650, subd. (b)(1).) The False Claims Act provides for civil penalties against a person who, among other matters, "[k]nowingly presents or causes to be presented to an officer or employee of the state or of any political subdivision thereof, a false claim for payment or approval." (Gov. Code, § 12651, subd. (a)(1).)

Government Code section 12653, subdivision (b) provides: "No employer shall discharge, demote, suspend, threaten, harass, deny promotion to, or in any other manner discriminate against, an employee in the terms and conditions of employment because of lawful acts done by the employee on behalf of the employee or others in disclosing information to a government or law enforcement agency or in furthering a false claims action, including investigation for, initiation of, testimony for, or assistance in, an action filed or to be filed under Section 12652 [to enforce the False Claims Act]."

The False Claims Act must be construed broadly so as to give the widest possible coverage and effect to the prohibitions and remedies it provides in Government Code section 12653. (*Southern Cal. Rapid Transit Dist.* v. *Superior Court* (1994) 30 Cal.App.4th 713, 724 [36 Cal.Rptr.2d 665].)

Here VCSS, which has the burden on its motion for summary adjudication, does not dispute that it applied for and received money to operate the unit school from the state. Nor does it dispute that the state in return for its money expected adequate staffing at the unit school. The state was not getting what it was paying for. It takes no leap of imagination to conclude that LeVine's expressions of concern about inadequate staffing were within the protection of section 12653, subdivision (b) of the Government Code.

VCSS claims it is not a person within the meaning of the False Claims Act. But Government Code section 12650, subdivision (b)(5), defines person as "any natural person, corporation, firm, association, organization . . . business, or trust." The terms "association" and "organization" are broad enough to encompass VCSS.

It is true that other statutes containing similar definitions of "person" have been held not to apply to governmental entities. (See *Santa Monica Rent Control Bd.* v. *Bluvshtein* (1991) 230 Cal.App.3d 308, 318 [281 Cal.Rptr. 298] [Unfair Practices Act, Bus. & Prof. Code, § 17201]; *Penn* v. *City of San Diego* (1987) 188 Cal.App.3d 636, 642 [233 Cal.Rptr. 514] [Cartwright Act, Bus. & Prof. Code, § 16702].) But the statutes involved in those cases, the Unfair Practices Act and the Cartwright Act, largely concern the regulation

of private business. The False Claims Act is different from those statutes in that its purpose is to protect the public fisc.

The definition of "person" must be read in light of the context and purpose of the statute. There is no reason to conclude the Legislature intended that the protection afforded to the public treasury by the act be denied merely because the entity raiding the treasury is a governmental entity.

The court in *Southern Cal. Rapid Transit Dist.* v. *Superior Court, supra,* 30 Cal.App.4th at page 724, gave the False Claims Act a broad construction so as to give it the widest possible coverage. The court there was referring to acts that come within the scope of the statute. The broad interpretation should also apply to the person or entity committing the alleged fraud. We give the act such an interpretation here. The most likely way that fraud perpetrated by a governmental entity will be exposed is through governmental employees who see the fraud being committed.

VCSS relies on *Community Memorial Hospital* v. *County of Ventura* (1996) 50 Cal.App.4th 199, 209-211 [56 Cal.Rptr.2d 732]. There we determined that a county was not subject to the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.) and could not be sued in its operation of a public hospital furnishing free care to indigents. That determination was based on the rule that governmental agencies are excluded from the general provisions of a statute only if their inclusion would result in an infringement upon sovereign powers. (*Community Memorial Hospital, supra,* at p. 210.)

A county may have the sovereign power to fulfill its duty to guard the public health free from regulations that govern ordinary business. But no governmental agency has the power, sovereign or otherwise, knowingly to present a false claim. The very notion is repugnant to how government should operate by and for the people. VCSS is subject to the False Claims Act.

VCSS argues our interpretation of the False Claims Act creates an "incongruous dilemma" where the state could be found liable to itself. VCSS cites *Eaglesmith* v. *Ward* (9th Cir. 1995) 73 F.3d 857, 860, for the proposition that a county office of education is a state agency and a money judgment would be satisfied out of state funds.

*Eaglesmith* concerns whether a county office of education is a state agency entitled to Eleventh Amendment immunity from suit in federal court. The court relied on *Belanger* v. *Madera Unified School Dist.* (9th Cir. 1992) 963

F.2d 248, in concluding that it was. *Belanger* determined that a school district was immune in part because any judgment would be satisfied out of state funds. The court reasoned that the state determines the amount of money the district may spend per pupil and then provides the funds. (*Id.*, at p. 252.)

Contrary to VCSS's argument, the cases do not show that the state could be liable to itself. They only show that the state contributes to the school district's budget based on the number of pupils in the district. There is not even a showing that the state might be indirectly liable. VCSS cites no authority that would require the state to increase the school district's funding to pay for an adverse judgment in this case.

■ The question remains whether the evidence shows as a matter of law that LeVine's employment was not terminated in retaliation for his threats to inform the state about inadequate staffing. That LeVine made such a threat is confirmed by Strayhorn's memorandum of December 19, 1994. A reasonable trier of fact could determine the memorandum was disciplinary in nature both from its tone and from the statement that it would be placed in LeVine's personnel file.

The next day Strayhorn told LeVine that correctional staff reported he was acting irrationally. Strayhorn sent LeVine home until he could obtain a note from his doctor. VCSS produced no evidence that LeVine was acting irrationally or that anyone reported so to Strayhorn. In light of the lack of such evidence and the timing of the suspension, so soon after LeVine threatened to inform the state, a reasonable trier of fact could conclude the suspension was retaliatory.

LeVine filed a grievance. Dritz sent a letter stating that an agreement had been reached. LeVine denied that any agreement had been reached. VCSS's letter did not promise any specific remedy for the intolerable and illegal conditions that led LeVine to protest in the first place. LeVine testified in his deposition that Dritz was trying to badger him into returning to work under conditions that were "demeaning, degrading and illegal."

Finally, on January 23, 1995, Dritz sent a letter to LeVine's attorney requiring LeVine to return to work on the same day. There is no indication the letter could have arrived in time for LeVine to comply. VCSS claims the date stated in the letter was an obvious mistake. But a trier of fact who views VCSS's motive as retaliatory might not be so convinced. The record discloses no effort on the part of VCSS to correct any mistake.

The trial court erred in granting summary adjudication as to his cause of action based on Government Code section 12653. [[/]]*

[[II-V]]*

The judgment is reversed on LeVine's statutory cause of action under the False Claims Act. In all other respects the judgment is affirmed. Costs on appeal are awarded to LeVine.

Yegan, J., and Coffee, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied March 17, 1999.

*See footnote, *ante*, page 758.