[No. B132951. Second Dist., Div. Two. Mar. 8, 2000.]

CHARLES QUACKENBUSH, as Insurance Commissioner, etc., Petitioner,
v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ARTHUR ANDERSEN LLP, Real Party in Interest.

868

**COUNSEL**

Mitchell, Silberberg & Knupp, Jean Pierre Nogues, Ronald A. DiNicola and Brenda S. Barton for Petitioner.

No appearance for Respondent.

Hennigan, Mercer & Bennett, J. Michael Hennigan, Jeanne E. Irving; Greines, Martin, Stein & Richland, Irving H. Greines and Dana F. Gardner for Real Party in Interest.

**OPINION**

**BOREN, P. J.**—Petitioner, Charles Quackenbush, Insurance Commissioner of the State of California (Commissioner), seeks a writ of mandate directing the superior court to vacate its May 19, 1999 order granting the motion for summary adjudication of the professional negligence cause of action brought by real party in interest Arthur Andersen LLP (AA).

### I. FACTUAL AND PROCEDURAL BACKGROUND

Cal-American Insurance Company was, until May 1993, an insurance company issuing policies within the State of California. AA audited the financial statements of Cal-American in 1990 and 1991, and issued audito-pinions in connection with each of those audits. Cal-American was AA's audit client in connection with the 1990 and 1991 audits. In May 1993,

Cal-American was placed in conservatorship, and, pursuant to California Insurance Code section 1010 et seq.,[1] the Commissioner became Cal-American's conservator. Subsequently, the conservation proceedings against Cal-American was converted into liquidation proceedings, and the Commissioner became the liquidator for Cal-American.

In 1996, the Commissioner filed a first amended complaint for professional negligence and negligent misrepresentation in connection with the 1991 audit of Cal-American's 1991 financial statements and issuance of AA's audit opinion.

In October 1997, AA filed a motion for summary judgment or, in the alternative, for summary adjudication of both the professional negligence and negligent misrepresentation causes of action, claiming that AA owed no duty to the interests represented by the Commissioner. When the superior court denied AA's motion, AA filed a petition for writ of mandate. Thereafter, this court affirmed the superior court's denial of summary judgment and summary adjudication. (*Arthur Andersen v. Superior Court* (1998) 67 Cal.App.4th 1481 [79 Cal.Rptr.2d 879] (*Andersen*).) Our opinion did not deal with the issue of whether the Commissioner was permitted to pursue a claim against AA pursuant to section 1037.[2]

---

[1] All further references are to the California Insurance Code unless otherwise indicated.

[2] Section 1037 provides as follows: "Upon taking possession of the property and business of any person in any proceeding under this article, the commissioner, exclusively and except as otherwise expressly provided by this article, either as conservator or liquidator:

"(a) Shall have authority to collect all moneys due that person, and to do such other acts as are necessary or expedient to collect, conserve, or protect its assets, property, and business, and to carry on and conduct the business and affairs of that person or so much thereof as to him or her may seem appropriate.

"(b) Shall collect all debts due and claims belonging to that person, and shall have the authority to sell, compound, compromise, or assign, for the purpose of collection upon such terms and conditions as the commissioner deems best, any bad or doubtful debts.

"(c) Shall have authority to compound, compromise or in any other manner negotiate settlements of claims against that person upon such terms and conditions as the commissioner shall deem to be most advantageous to the estate of the person being administered or liquidated or otherwise dealt with under this article.

"(d) Shall have authority without notice, to acquire, hypothecate, encumber, lease, improve, sell, transfer, abandon, or otherwise dispose of or deal with, any real or personal property of that person at its reasonable market value, or, in cases other than acquisition, sale, or transfer on the basis of reasonable market value, upon such terms and conditions as the commissioner may deem proper. However, no transaction involving real or personal property shall be made where the market value of the property involved exceeds the sum of twenty thousand dollars

After issuance of the remittitur to the superior court, AA filed a second motion for summary adjudication of issues, this time addressed only to the Commissioner's professional negligence claim. In support of its motion, AA filed two declarations showing that it had been engaged to perform the 1991 Cal-American audit by Cal-American. AA argued that Cal-American was its only audit client, and that under *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835] (*Bily*) and this court's opinion in *Andersen,* the Commissioner did not have standing to assert auditor negligence claims against AA. The superior court granted AA's motion for summary adjudication. This petition followed.

---

($20,000) without first obtaining permission of the court, and then only in accordance with any terms that court may prescribe.

"(e) Shall have authority to transfer to a trustee or trustees, under a voting trust agreement, the stock of an insurer heretofore or hereafter issued to the commissioner as conservator or as liquidator in connection with a rehabilitation or reinsurance agreement, or any other proceeding under this article. This voting trust agreement shall confer upon the trustee or trustees the right to vote or otherwise represent that stock, and shall not be irrevocable for a period of more than 21 years.

"(f) May, for the purpose of executing and performing any of the powers and authority conferred upon the commissioner under this article, in the name of the person affected by the proceeding or in the commissioner's own name, prosecute and defend any and all suits and other legal proceedings, and execute, acknowledge and deliver any and all deeds, assignments, releases and other instruments necessary and proper to effectuate any sale of any real and personal property or other transaction in connection with the administration, liquidation, or other disposition of the assets of the person affected by that proceeding; and any deed or other instrument executed pursuant to the authority hereby given shall be valid and effectual for all purposes as though it had been executed by the person affected by any proceeding under this article or by its officers pursuant to the direction of its governing board or authority. In cases where any real property sold by the commissioner under this article is located in a county other than the county wherein the proceeding is pending, the commissioner shall cause a certified copy of the order of his or her appointment, or order authorizing or ratifying the sale, to be filed in the office of the county recorder of the county in which that property is located.

"(g) Shall have authority to invest and reinvest, in such manner as the commissioner may deem suitable for the best interests of the creditors of that person, such portions of the funds and assets of that person in his or her possession as do not exceed the amount of the reserves required by law to be maintained by that person as reserves for life insurance policies, annuity contracts, supplementary agreements incidental to life business, and reserves for noncancellable disability policies, and which funds and assets are not immediately distributable to creditors. However, no investment or reinvestment shall be made which exceeds the sum of one hundred thousand dollars ($100,000) without first obtaining permission of the court, and then only in accordance with any terms that court may prescribe. That permission shall not be required for any investment or reinvestment of those funds or assets in funds administered by the Treasurer.

"The enumeration, in this article, of the duties, powers and authority of the commissioner in proceedings under this article shall not be construed as a limitation upon the commissioner, nor shall it exclude in any manner his or her right to perform and to do such other acts not herein specifically enumerated, or otherwise provided for, which the commissioner may deem necessary or expedient for the accomplishment or in aid of the purpose of such proceedings."

## II. Contentions

The Commissioner contends that he is entitled—as liquidator of Cal-American—to bring suit for professional auditor negligence against AA under *Bily* and *Andersen* even though the Commissioner was not named in Andersen's engagement letter as an "audit client."

## III. Discussion

*The Commissioner is entitled to bring suit for professional auditor negligence against AA under section 1037.*

■ Section 1037, subdivision (f) provides that the Commissioner has the exclusive authority, as liquidator, to prosecute and defend any and all suits and other legal proceedings for the purpose of collecting debts and claims due to the liquidated insurance company. Section 900.2 requires that "[a]ll insurers doing business in this state shall have an annual audit by an independent certified public accountant" and shall file an audit report with the Commissioner.

In *Andersen*, we noted that AA performed an audit of the 1991 financial statements of Cal-American. As required by section 900.2, AA's audit report was filed with the Commissioner. The Commissioner's staff allegedly relied on AA's unqualified audit opinion to accept that Cal-American's financial statements fairly represented its financial position in accordance with generally accepted accounting principles. Since the financial statements showed Cal-American to be solvent, no regulatory action was taken. In actual fact, Cal-American was insolvent. Its financial statements materially misrepresented its true financial condition by failing to disclose that a significant portion of Cal-American's assets were encumbered as a result of related party transactions. (*Andersen, supra,* 67 Cal.App.4th at pp. 1483-1484.) By the time the Commissioner discovered Cal-American's true insolvent condition, Cal-American had allegedly descended deeper into insolvency, and had become unable to pay an increased amount of insurance claims. The Commissioner instituted conservation proceedings that were later converted into liquidation proceedings. The Commissioner then filed suit for professional negligence and negligent misrepresentation against AA, claiming that he would have acted sooner and would have reduced the losses caused by Cal-American's deepening insolvency if AA's audit report had been accurate. (*Id.* at pp. 1484-1485.)

AA moved for summary judgment and summary adjudication, contending that AA owed no duty to the interests represented by the Commissioner. The

trial court denied AA's motion. AA then petitioned for a writ of mandate. (*Andersen, supra,* 67 Cal.App.4th at p. 1485.) The primary issue was whether AA was entitled to summary judgment on the authority of *Bily.* We summarized *Bily* as follows: "[T]he universe of persons to whom an auditor can be liable for a negligent audit is determined according to section 552 of the Restatement Second of Torts (Restatement 552). According to Restatement 552, as interpreted in *Bily,* an auditor may be liable for negligence to the audit client, and for negligent misrepresentation to 'those persons who act in reliance upon those misrepresentations in a transaction which the auditor intended to influence.' (*Bily, supra,* 3 Cal.4th at p. 376.) On the other hand, audit reports are often widely disseminated, and the auditor's potential liability does not extend to the entire universe of third persons who might possibly read an audit report. This limitation on the universe of potential plaintiffs was deemed necessary to avoid liability out of proportion to the auditor's degree of fault and unrelated to the degree of connection between an auditor's report and a third party's injuries. (*Id.* at pp. 401-402.)" (*Andersen, supra,* 67 Cal.App.4th at p. 1485.) We concluded, "An issue is thus posed as to whether the Insurance Commissioner, with whom an audit report must be filed by statute, is within the universe of permissible plaintiffs defined in *Bily.*" (*Ibid.*)

We held that "the Insurance Commissioner, in his capacity as liquidator of Cal-American's estate, may recover from AA on behalf of the liquidation estate (for the benefit of policyholders and others having claims against the liquidation estate) for damage caused to the liquidation estate by *negligent misrepresentations* in AA's audit report." (*Andersen, supra,* 67 Cal.App.4th at p. 1486, italics added.) As to the professional negligence cause of action, we stated: "Although (as held in *Bily*) the Insurance Commissioner can recover from AA for professional negligence only if the Insurance Commissioner was AA's audit client, the issue of who was the audit client was not fully developed in the trial court." (*Id.* at pp. 1486-1487.) "For example, the record does not contain AA's audit engagement letter. In addition, AA's separate statement says nothing about how AA was retained for this audit. It implicitly appears to be the case that AA's engagement was solely with Cal-American, and that the Insurance Commissioner was at most an expected beneficiary by reason of [Insurance Code] Section 900.2. If this is correct, AA will be entitled to judgment on the Insurance Commissioner's negligence (as opposed to the negligent misrepresentation) claim." (*Id.* at p. 1487, fn. 2.)

■ According to AA, the above cited language means that this court has already ruled that the Commissioner does not have standing to assert a professional negligence claim against AA under any authority (including

§ 1037), and that even if the ruling was incorrect it still must stand under the law of the case doctrine.

█ "The law of the case doctrine states that when, in deciding an appeal, an appellate court 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal.' " (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892-893 [12 Cal.Rptr.2d 728, 838 P.2d 250].) █ In our prior decision, this court expressly declined to reach the issue of whether or not the Commissioner had standing to bring an auditor negligence claim against AA because the record concerning that issue had not been adequately developed. We held that "gaps" in the record made it impossible to decide the negligence/standing issue, and expressly stated that we would not "decide what the proper ruling would be if these gaps were closed." (*Andersen, supra*, 67 Cal.App.4th 1481, 1487, fns. 2, 3.) This court's discussion of what its ruling might be on standing if what implicitly appeared to be true based on the then incomplete record proved to be true, namely, that the commissioner's only claim was as an expected beneficiary of the audit was not necessary or essential to our decision, was dicta, and is not binding on the parties, the trial court or this court as law of the case. We note, however, that in making the foregoing comments, we were not discussing whether, as a separate basis, the Commissioner had standing based on section 1037, which expressly gives him standing to bring Cal-American's claim for auditor negligence as liquidator of its estate.

█ In his amended complaint, the Commissioner asserts claims for injury to Cal-American and its estate in liquidation. By statute, all such claims are for the benefit of creditors, policyholders and others interested in the estate of Cal-American. (§ 1057.) The Commissioner has the sole and exclusive authority, as Cal-American's liquidator, to among other things "collect all debts due and claims belonging to" Cal-American. (§ 1037, subds. (a) & (b).) The Commissioner has the sole and exclusive authority, as Cal-American's liquidator, to among other things, "prosecute and defend any and all suits and other legal proceedings" for the purpose of collecting debts and claims due to Cal-American. (§ 1037, subd. (f).) The Commissioner may bring any such suit in his own name or in the name of Cal-American.

Under section 1037 and as Cal-American's liquidator, the Commissioner has been given the exclusive right to pursue, collect and sue on any and all claims that Cal-American may have. It is undisputed that Cal-American was AA's audit client. AA admits that under *Bily* and *Andersen* an

audit client has standing to sue for the negligence of its auditor. It follows that the Commissioner, as Cal-American's liquidator, has standing to pursue Cal-American's auditor negligence claim against AA for damage to Cal-American and its estate.

## IV. CONCLUSION

The superior court's ruling, to the extent that the first cause of action for professional negligence seeks to assert the claims of an entity other than the audit client (Commissioner), was correct. (*Bily*, *supra*, 3 Cal.4th 370; *Andersen*, *supra*, 67 Cal.App.4th 1481.) The court's ruling was incorrect, however, to the extent that it holds that the Commissioner may not, pursuant to section 1037, assert the claims of Cal-American, AA's audit client.

## V. DISPOSITION

Let a writ of mandate issue directing the superior court to set aside its May 19, 1999 order granting AA's motion for summary adjudication of the professional negligence cause of action, and issue a new and different order granting the motion to the extent that the professional negligence cause of action seeks to assert the claims of an entity other than the audit client (Commissioner), and denying the motion to the extent the first cause of action seeks to assert the claims of the audit client (Cal-American Insurance Company) as authorized by section 1037.

Nott, J., and Cooper, J., concurred.